Mr. Justice Morris
delivered the opinion of the Court:
The assignments of error are exceeding^ numerous, amounting to seventy-seven in all. But we do not deem it necessary to consider all these, or indeed more than one of them. For we are of opinion that this suit can not be sustained against the Capital Traction Company for the alleged delinquency of the Washington and Georgetown Railroad Company. We know of no rule or principle of the common law, which would authorize suit to be maintained against one person, who is sui juris, for the default of another person, who is equally sui juris, whether the persons be natural persons or corporations. For one corporation can no more be held for the default of another corporation than can one natural person for the default of another natural person.
This principle of law is not sought to be controverted on behalf of the appellee; but it is supposed that there is something in this case which takes it out of the general rule. And the argument is, that the Washington and Georgetown Railroad Company and the Capital Traction Company have become in fact consolidated or merged into each other, and that therefore the latter, as the surviving or consolidated company, has become liable for the obligations of its predecessor.
It is undoubtedly the law that, when two or more corporations become consolidated with each other by permission or authority of the sovereign power, whether under a new name or under the name previously held by one of the component companies, the new corporation so formed, although in technical strictness an independent organization entirely distinct from the companies which have become merged in *306 it, is chargeable, at all events in equity, and generally, if not always, even at common law, with all the liabilities of its component members and of each one of them. Moreover, as is very justly argued on behalf of the appellee, there may be actual consolidation to all intents and purposes, without its being so designated. There is no magic in the use of the word consolidation to effect that result. If the coming together of two corporations under the authority of law be in fact consolidation, it is of no consequence by what name the act is characterized; nor is it of any consequence by what steps the result has been effected. One of those steps may take the shape of bargain and sale.
But the power of corporations, especially those which exercise a public function such as is exercised by railway companies,.is derived from the law of their creation; and they may not combine with each other, or be amalgamated, or consolidated, or be merged one into another, except by express authority of statute enacted for the purpose, which,. when given, will be the measure of the.extent and character of the combination to be effected. It is very plain that statutory authority to one corporation to purchase the property, or the property and franchises, of another corporation, with appropriate action thereunder by the corporations to be affected, can not, of itself and without further provision of some kind, operate to effect a consolidation of the two companies, so as to charge the purchaser company in law with the liabilities of the vendor. For it might well be that the vendor company might desire to dissolve, or go out of business, or to limit its business; or that, being hopelessly involved in debt beyond the value of its assets, it could not efficiently exercise its franchise for the benefit of the public, which yet should be exercised, and therefore should be transferred to some more capable corporation. And it might well be that the purchaser company would pay in cash a full and adequate consideration for the property and franchises purchased by it. Assuredly in such cases, when no *307 consolidation is intended or sought to be effected, the mere purchase by one corporation of the property and franchises of another corporation under authority of law, and the succession of the purchaser corporation to the exercise of the franchise held by the vendor corporation, could not reasonably be held to operate as a consolidation of the two companies, or to charge the purchaser company with the liabilities of its predecessor in the franchise. The succession of the purchaser company to the franchise in such a case is not a succession in the sense in which that term is used in relation to the kind of corporation which is known as a corporation sole.
A contract of purchase and sale between two corporations is not different in law from a similar contract between two individuals, except that individuals may contract freely with each other, and corporations require legislative authority to enter into such contracts as are involved in the case under consideration. The construction and effect would be the same whether such contracts were made by individuals or by corporations. In neither case would the purchaser become liable either for the torts or the contracts of the vendor, and least of all for the torts, unless such liability entered into the transaction and became part of the consideration for the transfer, and then only in the manner and to the extent stipulated. This is so plain a principle of law and justice that it needs only to be stated in order to insure its prompt acceptance.
It is very plain, therefore, that something more than the mere purchase of the assets and franchises of one company by another under authority of law given for such sale and purchase, is required to effect a consolidation of the two companies, or to charge the purchaser company with the liabilities of the vendor. Now, there is nothing whatever in the act of Congress under which the purchase in question was authorized, beyond the mere authority to make the purchase, which looks to a consolidation of the *308 Washington and Georgetown Railroad Company with the Rock Creek Railway Company. Except an authority for joint management or lease, which may be left out of consideration inasmuch as it was never availed of by the Rock Creek Company, the sole provision in the statute — and there is nothing else in our laws that has any bearing on the subject — is an authorization to the Rock Creek Company to purchase any connecting or intersecting line or lines of railroad and to operate the same in connection with its original lines, and permission to raise the money for the purpose of effecting the purchase by a sufficient increase of its capital stock. Whatever may have been the intention of those who promoted this legislation, there is not a word in the statute which intimates in any manner that it was its purpose to effect a consolidation of the two companies, or that the proposed purchase should be made subject to the assumption of the liabilities of the Washington and Georgetown Railroad Company by the Rock Creek Railway Company. On the contrary, the plain inference from the statute was that the latter company should pay to the former a full and adequate consideration for the property and franchises proposed to be transferred, which should serve as a substitute therefor to meet the liabilities of the vendor company, if any it had, and not that there should be any consolidation of the two or merger of one into the other. In the absence of statutory authority, we can not see how there can be consolidation in this Districl of two or more corporations exercising the franchise of a railroad company; nor can we see how, in the absence of legal provision, a company which purchases the property and franchises of another company, can by virtue of such purchase be charged with the liabilities of the company from which it has purchased.
But in this case, and apparently as part of the consideration for the transfer, and entering into the contract therefor, the Rock Creek Railway Company covenanted to “assume, discharge and perform all the obligations” of the *309 Washington and Georgetown Railroad Company, “ and all its liabilities of what kind soever,” and to that end would use the property conveyed to it. so far as might be necessary ; and it is contended that this agreement and the contract, in which it is contained, operated to make the appellant liable to the appellee. But we understand it to be conceded, and certainly it must be conceded, that such a contract between two natural persons would not make the purchaser directly responsible at common law to a third party for the obligations of the vendor; and this for the reason, if for no other, that the liability of the vendor is without limitation, and that of the purchaser is to be governed by the terms of his contract, and generally does not extend beyond the value of the property transferred to him. Whatever, therefore, might be the liability of the purchaser under such a contract to a third party in equity, it is certainly not contemplated that he should be subject to a suit at common law at his instance for the liabilities which primarily are those of the vendor. Now, it is not apparent why, in the absence of statutory provisions expressly or by implication imposing such liability as a condition of the transfer, a corporation should be any more liable to a third party for the obligations of another corporation whose property it has purchased, than a natural person would be under similar circumstances. The law is not different in this regard for the corporation and for the natural person. The act of Congress might have required the Rock Creek Railway Company, as the condition for being permitted to purchase the franchise of the Washington and Georgetown Railroad Company, to assume, the liabilities of the latter, and to submit to suit for them as though it had been itself originally liable; but it made no such condition; and the contract between the two companies can not be construed to operate as imposing such liability against their will.
In connection with the question of consolidation some importance apparently is attached to the fact that of the *310 $10,750,000 of the new stock authorized to be issued by the Rock Creek Railway Company, stock of the par value of $2,750,000 was agreed to be issued to the stockholders of the Washington and Georgetown Railroad Company, upon their surrender of their stock in this latter company at the market value of $275 a share; and this is claimed to evidence mere consolidation. But we do not so understand it. The provision was that the whole sum of $10,750,000 should be paid by the Rock Creek Company to the Washington and Georgetown Railroad Company as the approximate value of all the assets of the latter; and that of this sum $8,000,000 should be used for the retirement of the bonds of the latter company, and the remainder for the purchase or extinguishment of the stock, without which the transfer of the property could not well have been effected.
We do not think that the conclusion which we have here reached is. antagonized by any of the adjudicated cases cited on behalf of the appellee. Some of these are cases of consolidation, pure and simple, authorized by express provision of law; others are cases in which the property of one company has been transferred to another in fraud of the rights of creditors or subject to a charge in favor of creditors, and in which courts of equity have reached such property for the benefit of such creditors. One of them, the case of Trustees of the University, etc., v. Moody, 62 Ala. 389, was where there was a change of name and of management, and no actual change of the corporation itself. But .the case principally relied on by the appellee in this connection is that of Chicago, etc., Railway Co. v. Ashling, 56 Ill. App. 327, first in the intermediate appellate court of the State of Illinois, and afterwards in the Supreme Court of the State, in 160 Ill. 373. In that case it appeared that there was a general statute of the State of Illinois which provided that in all cases when any company or corporation chartered under the laws of the State should consolidate its property, stock *311 or franchises with any other company or companies, such consolidated company should be liable for all debts and liabilities of each company included in such consolidation, and suit might be instituted and maintained therefor against such Consolidated company. But there was no law regulating or prescribing the course to be pursued in effecting a consolidation. One railroad company purchased the whole property and franchises of another railroad company, and by way of purchase issued its own stock, dollar for dollar, to the stockholders of the absorbed company, changing their rights merely from the selling to the purchasing company. An action of trespass was pending against the vendor company at the time of the consolidation or absorption. A plea in abatement to the effect that the vendor company was dissolved and that the suit against it could no longer be maintained, was overruled, and the plaintiff recovered judgment. Afterwards suit was entered on this judgment against the consolidatód company, and judgment rendered thereon against the latter company. This came for review before the appellate tribunals; and it was held that the transaction was a consolidation, and not merely a bargain and sale. But it is to be noticed that the statute authorized consolidation, and not the transfer in terms of its property and franchises by one corporation to another. Consolidation plainly was what was intended whether it was so called or not; and the law governing consolidation was the only law applicable. One company may be authorized to consolidate its property and franchises with another company, and yet not .to sell to it and still maintain its separate existence; and, on the other hand, one company may be authorized to sell to another and yet not to be consolidated with it. The difference between these two provisions is the difference between the case cited and that before us for our consideration.
So also the case of the New Bedford Railroad Company v. Old Colony Railroad Company, 120 Mass. 397, is supposed to be almost identical with the present case. But plainly this *312 is an error. There one railroad company was authorized to purchase the franchise and property of another railroad company, but upon the express condition that the purchasing corporation should then “ be subject to all the duties, liabilities, obligations and restrictions ” of the vendor company; and it was held that the liabilities thus imposed were not mérely liabilities towards the public for the faithful exercise of the franchise, as claimed by the purchaser company, but the liabilities of every kind resting upon the vendor. We fail to see wherein this is an authority for the present case.
Without further elaboration, we may say that, if Congress had intended a consolidation in this instance, it could easily have said so. It seems studiously to have avoided saying so, 'and therefore not to have intended it. Likewise, it would have been competent for Congress, as a condition for the purchase which it authorized, to impose upon the purchaser a liability for the obligations of. the vendor company. It seems studiously to have avoided doing this also. It authorized a purchase, and nothing whatever beyond that; and we think that it would do violence to the statute to add to it by construction provisions which are not contained in it. The rights of the creditors of the Wasüington and Georgetown Railroad Company do not demand any such construction. Those rights seem to be reasonably secure in any event. That company remained, and we may assume yet remains, alive for the purpose of suit against it; and it is not apparent that a judgment against it will not be paid, or that it can not be enforced by proper proceedings for the purpose. It is true that its property and franchises have now passed into the possession of the Capital Traction Company; and presumably it has now no property of its own wherewith to satisfy its liabilities, if any there are. But this fact, while it may justify recourse to a court of equity in proper cases, does not any more than in the case of a natural person similarly situated, authorize the institution of suit at com *313 mon law against the Traction Company for the delinquences of the Washington and Georgetown Railroad Company. It appears from the record that judgments against the latter company rendered subsequently to the transfer of assets to the Traction Company have been duly paid; and, therefore, while it might have been more convenient if suit had been authorized directly against the Capital Traction Company in cases. like the present, yet, as Congress has not so provided, we see no hardship in remitting parties to the ordinary procedure of the common law.
We are of opinion, therefore, that this suit can not be sustained against the Capital Traction Company for any tortious action committed by the Washington and Georgetown Railroad Company before September 21, 1895, which seems to have been the date of the transfer of its assets • by the latter company to the former; and that there was error in the rulings of the trial court to the contrary. Consequently we must reverse the judgment appealed from and remand the cause for a new trial. And it is very clear that upon a new trial, in order to justify any recovery against the defendant in this case, all claim of damage for the tort of the Washington and Georgetown Railroad Company must be eliminated.
We greatly regret that we can not put our judgment in a shape to be reviewed by the Supreme Court of the United States upon the record now made. If the case stood alone on the third count of the declaration, we might do so by entering a final judgment here, or by declining to remand the cause for a new trial; for then it would be plain that, if the view which we take of the case be correct, there could be no recovery whatever by the plaintiff in these proceedings. But the judgment, from which the appeal has been taken, is a general judgment upon all the counts; and in two of these, the first and second, there is a a good cause of action stated against the defendant for its own alleged tort for the period between September 21, 1895, and the time of *314 the institution of the suit on November 10,1896. We have no option, therefore, but to remand the cause for a new trial.
The judgment of the Supreme Court of the District of Columbia in this cause will, therefore, be reversed, with costs; and the cause will be remanded to that court, with directions to set aside the verdict and to award a new trial. And it is so ordered.