BULLOCK *versus* THE GOVERNOR, for the use, &c.

Where a commissioner, appointed by the Governor, to rent the University lands, had collected rents which he had never reported, it was, held, that a bill for discovery, and account, was properly cognizable in equity, and that the suit was well brought in the name of the Governor—also, that there being an evident default in the non-payment of the money collected as rents, the Chancellor properly decreed interest on the account.

This was a bill filed in the name of the Governor against the plaintiff in error, in the Circuit Court of Franklin. The object of the bill, was the discovery of the amount of rents, alleged to have been received by the plaintiff in error, as agent of the University of Alabama. The answer admitted the agency, and the receipt of rents, but demurred to the bill, and made other objections as to the right of the plaintiff below to recover. The matter was referred to the Master, and on his report, a final decree was rendered against the defendant below. It was assigned, on error to this Court,

First—that the demurrer to the bill should have been sustained.

Second—that the suit could not be maintained in the name of the Governor.

Third—that interest was improperly allowed by the master on the balance of the account.

PECK, for Plaintiff in error, cited *Aik. Dig.* 428, 431, 434 ; 2 *Johns. Ch. R.* 238 ; *Cooper's Equity Pl.* 185 ; *Johns. Cases* 435, note *a* ; 3 *Vesey, jr.* 7, 347 ; 8 *Vesey* .2 ; 7 *Vesey* 237 ; *Cooper's Eq. Pl.* 61, 124, 125, 134, 135.

ORMOND, *contra.—T. Dig.* 543 ; *Aik. Dig.* 262 ; 10 *Johns. Rep.* 597 ; 7 *Johns. Ch. R.* 149.

By Mr. Justice THORNTON:

This cause is brought up to reverse a decree of the Chancellor, rendered upon bill, answer, exhibits, and a report of the Clerk and Master. The bill was filed by the Governor, for the use of the State, and after-wards amended by leave of the Chancellor, by inserting in lieu of " use of the State," " use of the Trustees of the University of Alabama." The bill charges, that the defendant below, was appointed by the Governor commissioner for the purpose of letting to rent, certain lands, which had been granted by the Government of the United States, to this State, for the support of a seminary of learning; that the said defendant, by virtue of said appointment, did let to rent a large quantity of said lands, to persons unknown to the complainant; that he assumed and took upon himself the sole and exclusive agency in collecting and receiving the money due for the rent thereof; that by virtue of such agency, he has collected large sums of money, of which he has failed to make any report, or return, whereby the amount can be ascertained: that in violation of good faith, and contriving to defraud the complainant, he has failed and refused to disclose his actings in this behalf, and to account for his receipts. The bill prays for a discovery ; that an account may be taken; and that he be decreed to pay whatever balance may be found against him. The answer admits the appointment of the defendant, by commission from the Governor, which he says was received by him in January 1820. The answer, by way of plea in bar to the recovery sought, alleges, that the title to the lands in the commission designated, was not vested in the State of Alabama, but remained in the Government of the United States, until the year 1824 ; and that the re-

ceipts, for which he is sought to be rendered accountable, were all prior to that time. That, subsequent to this investiture of title in the State, and prior to the filing of this bill, by act of the Legislature the duty of collecting the funds, for the use of the University, was devolved upon a board of Trustees created by the said act, and made a body corporate. Hence he insists that if liable at all, for the money received by him, it is to the General Government; and furthermore, that, if liable to any one else, such liability should be enforced, not by the Governor for the use of &c., but by the said corporation. The answer also contains, as is authorised by our act of Assembly regulating chancery proceedings, a demurrer to the bill, for want of jurisdiction of the matter complained of. He then proceeds to admit, that in conjunction with ten other persons appointed to the same trust, he did, in February 1820, by virtue of the authority thus derived, rent out a large quantity of lands, taking bonds from the lessees, to the Governor. He submits as an exhibit, an account current, consisting of debits to a considerable amount of money collected by him from the lessees, upon the bonds so taken, and of credits of money paid by him; and charges for services in and about the collection of the money.

An order of reference was made by the Chancellor to the clerk or master, to take an account between the parties; which order authorises testimony oral, and by deposition, to be heard; and commands a report to the next term of the Court. At the ensuing term the master reported accordingly, an account exhibiting against the defendant a balance of $1702 93. To this account of the master the defendant filed exceptions, specifying as grounds thereof. 1. That the master has allowed interest on the monies collected

by the said defendant, from the time of collecting the same.    2. He should not have charged the respondent with the $240, mentioned in the answer, as being in the hands of Gray, the former sheriff.    In addition to this report of a stated account by the master, he exhibits in the form of a supplemental report, several matters, which he declined bringing into the account, but submits to the Chancellor for his determination; as for instance, several judgments upon bonds for rent, taken by the defendant, whose amounts, as far as the records shewed, were still in the hands of the sheriff, and never received by the defendant : as also a claim by the defendant of $69 as a credit, it being the difference between money and Huntsville Bank notes, which latter the defendant received to the amount of $469, from several rentors, without suit, in discharge of their bonds. The Court adopted the reported account, and decreed its amount without increase, or diminution.

- The first question presented by the assignment of errors, is whether the Chancellor should have sustained the demurrer to the bill.  I can see no reason why he should have done so. The jurisdiction of the court in this case, is sustainable on many grounds.    As between principal, and agent or factor, a bill for an account, is a common ground of chancery jurisdiction.    A fraudulent concealment by a trustee, of matters confided to his care and management, is alleged in the bill, which contains a prayer for a discovery ; as well as for an account, and decree for the balance which may be found due.    If the discovery sought, were the only matter which absolutely required the interposition of the Chancellor, yet I would think it competent and proper, in a case like this, being one of account, where the materials were accessible to the

Court, to retain the cause and do justice between the parties, in order to prevent further litigation.

But admitting the matter to be cognisable by the Court, the defendant questions the right of the complainant to maintain the suit. This ground of objection is two-fold. 1. That the general government is the true owner of this fund, as it resulted from the rent of lands not then granted by her : and 2. If not so, yet the Legislature, before the suit brought, had vested the interest in the Trustees of the University, who as a corporate body could, and alone ought, to have pursued the claim. The first objection is evidently founded in bad faith, and cannot be available. The defendant admits that he received the funds, for which he is called to account, under a commission and authority, which he derived from the Governor, for the use of the State ; and should no more be permitted to retain it, under the pretext of a better title in the United States, than would the tenants to whom he rented, be allowed to resist a recovery of their bonds, by alleging want of title in their lessor.

The second branch of the objection is more worthy of consideration; at least it is not like the other, the palpable offspring of bad faith; but it is equally unavailing as a defence. By an act of December 1819, the Governor was authorised to appoint commissioners in the different sections of the State, where this donated land was situated, whose duty it was, to rent out the lands, and take bonds payable to the Governor, who was required to sue thereon, for the use of the State. This act, did not require any bond to be executed by the commissioners thus appointed; nor did their trust and authority extend beyond the mere letting of the land, and taking bonds for the rent. The Governor was the person designated to collect. It

is apparent, however, that some intermediate agency was necessary in the conduct of this litigation. It was not practicable for the Governor to attend to this matter *in propria persona*, and the agency was most naturally devolved upon the commissioners, who took the bonds, and who had them in their possession. The agency admitted to have been exercised in this case, we are authorised to consider, as derived, either expressly, or by tacit implication from the Governor. It must be viewed in this light, or else the defendant was an officious intermedler. His responsibility is at least as great, if he acted in the latter capacity; so that he cannot complain, if the most charitable construction is put upon his conduct. Then we will assume, that the relation of principal and agent, existed between the Governor and the defendant in relation to the funds collected; and as a necessary consequence, there results an accountability to him. It is no objection to this accountability, that the interest in the subject matter had been transferred by the State, to the University, before the institution of this suit. Admit that the Trustees of the University could sue for this cause of action, yet it is perfectly consistent with legal analogy, that the Governor could still sue in relation to a subject which had been committed to him, as this was. A bailee can sue at law, by virtue of his special property, for any thing improperly withheld from him, although the true owner of it, or principal, could also maintain an action. Nor do I think there was error in permitting the amendment, by which a specific designation of the true destiny of this fund was introduced into the record. Why refuse to permit it? Its only effect could be to regulate the application, or appropriation of the proceeds of the suit. All defences,

competent to the defendant, still remained unimpaired. A recovery from him by the present suit would certainly bar any other complainant. So that there is no injury done him by the amendment.

The next assignment of errors, is the refusal of the chancellor to deduct from the balance reported by the master to be due, the sum of $69, mentioned above, as demanded on account of the receipt of depreciated currency in discharge of the bonds of several tenants. There does not appear to be any satisfactory reason for the surrender of those obligations upon payment of less than was due upon their face. If it had been made to appear that the obligors had been in failing circumstances, and that this negociation was made to save something in a wreck, then, on the principle, that trustees acting in good faith, and with a view to avoid a probable loss, ought not to be held responsible for mere defect of judgment in the matter of the trust, he ought to have been allowed the discount; but in this case no facts appear which would warrant such an inference.

It only remains to consider the assignment which relates to the refusal of the Chancellor to sustain the two exceptions taken by the defendant, to the report of the master The first is for the charge of interest. The master, as the report shows, charged interest on each item of money, from the time of its actual receipt by the defendant. In the case of *Colgin* vs. *Cummins*,[a] this Court held that interest on an open account is not recoverable as a matter of strict right, unless agreed to be paid. Chancellors, however always decree it against trustees, where there is evident default in the non-payment of the principal; or where it has been turned to profit. Here the money was wrongfully detained at least, and we do not

a 1 Porters' R. 1 ed. 156.

think it was against equity to charge the defendant
with the interest. The other exception taken to the
report, and overruled by the Chancellor, was, " the
commissioner should not have charged the respondent
with the $240 mentioned in the respondents answer
as being in the hands of Gray, former sheriff of
Franklin county." Now with regard to this, in the
first place upon an examination of the reported ac-
count, it does not appear that the sum mentioned
was charged against the defendant, as there is no
corresponding item to be found in it. But if it was
expressly included, I cannot say that the Chancellor
should have stricken it out; for although the answer
alleges, that the particular sum remains in the hands
of the sheriff; and although the answer in this par-
ticular, may be considered as responsive to the bill
charging its actual reciept; yet it may have been
abundantly established by testimony before the mas-
ter that it was actually received by the defendant.
The answer of a defendant, responsive to a matter
charged in the bill, is to be taken as true, when a
cause is brought to a hearing on the bill and answer.
But when the Chancellor, to procure accurate mate-
rials for his decree, refers a matter of account to au-
ditors to hear evidence *pro* and *con*; and settle the
balance; then, whatever he reports as due on one
side, or the other, ought, upon a principle, of univer-
sal application to all competent tribunals, to be adop-
ted, as just and proper, unless the contrary is made
to appear. A report, conforming to the order of re-
ference; shewing upon its face the adoption of no er-
roneous principle as the basis of its calculations; and
no error of fact, as to the items which compose it,
ought surely to be considered, as furnishing a proper
foundation for the decree of the Chancellor who

adopts it.   If any item of an account, properly ta-
ken, and reported, is sustained by insufficient or in-
competent testimony, the party aggrieved should
have excepted, and have the evidence spread out in
the report; so, if any evidence offered is rejected by
the master, he who offers it, should have it spread
out with his exception; in this manner, reserving
points for the determination of the Chancellor.   If
the master choose to do so, without any exception
made by the parties, he may, though it is not im-
peratively his duty, report the evidence to the Chan-
cellor, upon which any item has been rejected or
admitted.   But when it is not apparent on the face
of any account, which has been fairly audited, that
is, with proper opportunities afforded to the parties
to contest it, that any items composing it, are im-
properly admitted, or rejected, if it may not be adop-
ted as correct, the taking of an account would be a
mere farce.   In no way does it appear that this item
was improperly charged, if charged at all, against
the defendant.   I think the report bears upon its
face intrinsic evidence that no item was brought into
the account, as a charge against the defendant, ex-
cept such as he was proven to have received.   We
think there is no error in the decree.   It must there-
fore be affirmed with costs.