# Trustees of University *v.* Moody.

1. *Corporation; how may make contracts.*—Unless restrained by legislative enactment to a specific mode of contracting, the contracts a corporation has power to make, may be made in the same manner or form in which a similar contract could be made by an individual.

2. *Same; legislative intention to absolve from debt; presumption as to.*—A legislative intent, upon change or reorganization of a corporation, to absolve it from existing liabilities, cannot be inferred, but must unmistakably appear.

3. *Corporation; what is not a new one.*—The corporation created by the act of 1820, under the style of the "Trustees of the University of Alabama," has not been dissolved or a new corporation created in its stead, by force of subsequent legislation or the constitution of 1868; but its corporate rights and powers have continued unimpaired until the present time.

4. *Trustees of University; powers of.*—The present board of trustees of the University, though their powers have been somewhat changed and enlarged, succeeded to the property, rights and privileges to which the "Board of Education," as "Board of Regents," succeeded under the constitution of 1868, and there being no breach in the continuity of the corporate existence of the University, the present Board of Trustees succeeds to the debts and liabilities of the "Board of Regents," and is answerable therefor at law.

5. *Board of Education; legality of action of.*—Though the legislative power with which the Board of Education was vested, could only be exercised at its regular session at the seat of government, it could lawfully audit and adjust claims against the University, pertaining to it in its corporate capacity as Board of Regents, while the board was at the University and acting as a corporation.

APPEAL from Tuscaloosa Circuit Court.

Tried before Hon. WILLIAM S. MUDD.

Appellee, Washington Moody, brought said suit against the appellant, The Board of Trustees of the University of Alabama, as the assignee of a certain claim alleged to be due the Tuscaloosa Insurance Company for services rendered as fiscal agent of the old body corporate, known as "The University of Alabama," in receiving and disbursing certain moneys belonging to said University.

On the trial the plaintiff read in evidence two resolutions of the Board of Regents of the University of Alabama; one of which was adopted at the meeting of said Board, held in the city of Tuscaloosa on the 22d day of June, 1871, and is as follows:

Resolved, as a settlement of the claim of the Tuscaloosa Insurance Company, for services rendered the University of

Alabama as its fiscal agent, that a draft be drawn on the treasurer of the University, in the usual way, for one hundred and eighty dollars, payable on the 23d day of July, 1871, and that a like draft be drawn on said treasurer for the sum of three hundred and seventy-five dollars, payable on the 23d day of July, 1876, the annual interest on said latter draft to be paid annually on the 23d day of July of each year until paid, said draft to be made payable to said Tuscaloosa Insurance Company.

The second of these resolutions was adopted at a meeting held in the city of Montgomery on the 6th day of December, 1872, and is as follows :

"Resolved, that the president of the University be, and he is hereby, authorized to settle the claim of ————— Moody in accordance with the resolution of the board, passed at their meeting at Tuscaloosa, June 22d, 1871."

It was then shown that the Tuscaloosa Insurance Company had transferred the claim to the appellee and had ceased to do business.

No draft or check had ever been drawn in compliance with the resolutions, nor had any steps been taken to carry them into effect.

Plaintiff presented the claim to the appellant at their first session after reorganization in July, 1876, and demanded payment, which was refused.

This was all the evidence in the case, and the court, at the request of the plaintiff, gave the following written charge : "That if the jury shall believe the evidence to be true, that then they must find for the plaintiff." To this charge the defendant excepted.

The defendants then asked the following charges : "1. If the jury believe the evidence, all acts, resolutions and regulations enacted or established by the Board of Education, and Board of Regents, relative to the University, its organization and government, under the provisions of section 13 of the act of March 1, 1876, incorporating the present Board of Trustees of the University of Alabama (pp. 268-272, Session Acts, 1875-76) expired on the adjournment of the first meeting of the said board, constituted under said act. 2. That the present body corporate, known as The Board of Trustees of the University of Alabama, incorporated under said act of March 1, 1876, are not legally bound by the resolutions passed by the Regents of the University in reference to the plaintiff's claim, which have been introduced in evidence from the journals of said Regents' proceedings. The court refused to give either of said charges, and the defendant excepted. The various acts of the Leg-

[Trustees of University v. Moody.]

islature and of the Board of Education, and the constitutional provisions applicable to this case, are so fully stated in the opinion that they need not be further alluded to.

H. M. SOMERVILLE, and J. M. MARTIN, for appellant.—The corporation, which incurred the debt to appellee, died on the adoption of the constitution of 1868, and the common law rule applies that on the civil death of a corporation, all suits pending for or against it abate, and all debts due to and from it are totally extinguished.—Ang. & Ames on Corp. §§ 779, 195; 3 Smede & Mar. 791; 11 Ala. 472. Hence, when the Board of Education, at the sovereign command of the constitutional convention of 1875, was abolished, it legally perished, and its debts and obligations, of whatever nature, died with it. The fact that the old body corporate, known as the University of Alabama, may have been liable for this debt some fifteen years since, is of no avail; for the suit is explicitly based on certain promises proved to have been made by the Board of Regents. If these resolutions, therefore, of a deceased body corporate do not breathe a soul of life into this dead claim, now stale with the mould of so hoary an age, the last hope must perish of imparting to it a spark of vitality. It may be true, that if an old corporation be revived, its rights and responsibilities will be revived with it; but it is equally true that "if the grant operate as *a new creation,* the new corporation cannot be subject to the liabilities nor possess the rights of the old."—Ang. & Ames on Corp. § 780. The Board of Trustees of the University of Alabama, the corporators or trustees of the former, are appointed by the Legislature and the Governor. The latter had full legislative powers given in reference to all the public educational institutions of the State. The former is confined to the management of the University fund and property derived from a certain grant of congress. The laws of the latter had force over every foot of territory and in every county in Alabama. The ordinances of the latter had no force beyond the narrow limits of the University proper, its faculty and students. The one, in fine, was a legislature, as omnipotent within the domain of its constitutional authority, and the scope of its inhibitions, as the British parliament. The other is a mere artificial entity, whose chartered existence may pass away with the fleeting breath of a legislative enactment. And it certainly cannot be said that one is the successor of the other, or that the promise of one has any legal potency to bind the other.

FRANK S. MOODY, *contra.*—The sole question in this case

[Trustees of University v. Moody.]

depends on the construction of the act establishing the present board of trustees. If, by that act, they became the successors of the Board of Regents, then it is plain that the plaintiff is entitled to recover. The various Boards of Trustees, and the Board of Regents, are but the agents appointed by the State to manage the affairs of the one continuing corporation, "The University of Alabama," established by act of the legislature in December, 1820, and continuing in existence to this day. The name of the agency, and the manner of its appointment, have been several times changed, but the legal entity called by the legislature the "University of the State of Alabama," has never been abolished. The harsh rule of the common law, that a dead corporation owes no debts, and has none owing to it, has never obtained in this State in regard to a public corporation against which rights had attached.—See Wait's Actions and Defenses, vol. 2, page 351. The right created by the performance of the services and acknowledged by the resolutions of the Board of Regents, was beyond the power of the legislature to impair or destroy it. The case of *Broughton v. Pensacola*, 93 U. S. 266, is conclusive of the right of appellant to enforce his remedy at law, and it is also conclusive that the debt here sought to be enforced is a legal liability of the Board of Trustees as at present organized. They acquired all the property of the former corporation, and they took it burdened with all its liabilities, and subject to every remedy for their enforcement that would have existed had no change been made.

BRICKELL, C. J.—The technical rule of the ancient common law, "that a corporation could not manifest its intentions by any personal act or oral discourse, and that it spoke and acted only by its common seal," if it ever obtained in this country, is now obsolete. Unless restrained by legislative enactment to a specific mode of contracting, the contracts a corporation has capacity to make, may be made in that manner or form, in which a similar contract by an individual could be made. "The acts of the board of directors, evidenced by a written vote, are as completely binding upon the corporation, and as complete authority to their agents, as the most solemn acts done under their corporate seal." 2 Kent, § 47. The resolutions, or declarations, or admissions of the Board of Regents, (it is not material what is their form), are as full evidence of an indebtedness due from the University to the appellee, as would have been the promissory note, or an account stated with an individual. Neither the consideration of the debt, nor the capacity of the Uni-

[Trustees of University v. Moody.]

versity to contract it, is disputed; and in no more appropriate mode could it have been recognized, and its amount and the time of payment expressed.

The debt rests upon the corporation. It is in a large sense a public, rather than a private corporation. Though legislative power may not divert from its uses the donation of the lands made by Congress, or the donations of individuals, (*Vincennes University v. Indiana*), 14 How. 2681; yet, it may alter, amend, vary or enlarge the original act of incorporation.—*University v. Winston*, 5 Stew. & Por. 17. The act of Congress, enabling the people of the Alabama Territory to form a constitution and State government, and for the admission of the State into the Union, required "that thirty-six sections, or one entire township, to be designated by the Secretary of the Treasury, under the direction of the President of the United States, together with the one heretofore reserved for that purpose, shall be reserved for the use of a seminary of learning, and vested in the legislature of the said State, to be appropriated solely to the use of such seminary by the said legislature." On the 18th December, 1820, the legislature established as the beneficial donee of the trust, a *seminary of learning*, and denominated it "The University of Alabama." Its corporate name and style was, "The Trustees of the University of Alabama." In 1822, by statute it was declared, "the title of the lands, which this Sate has received as a donation from the Congress of the United States for a seminary of learning, is hereby vested in the said trustees and their successors in office," &c.—Clay's Dig. 583-586. The board of trustees was composed of the governor, the judges of the Supreme Court, and one trustee from each judicial circuit, except that in which the University is located, in which there were two, and these were elected by the legislature. Under this corporate organization, the University continued until the adoption of the constitution of 1868. That constitution placed the "common schools, and other educational institutions of this State, under the management "of a Board of Education, consisting of a Superintendent of Public Instruction and two members from each congressional district." This board was clothed with "full legislative powers in reference to the public educational institutions of the State," and its acts, "when approved by the governor, or when re-enacted by two-thirds of the Board, in case of his disapproval," had the force and effect of law, unless repealed by the General Assembly. The style of its acts was prescribed, and it was required to meet annually at the seat of government at the same time as the General Assembly. It was

[Trustees of University v. Moody. ]

declared "a body politic and corporate, by the name and style of the Board of Education of the State of Alabama," and "a Board of Regents of the State University."—Const. 1868, Art. 11. This Board was abolished by the constitution of 1875, and the University was placed under the management and control of a Board of Trustees, consisting of two members from the congressional district in which the University is located, and one from each of the other congressional districts of the State. The Governor was declared *ex officio* a member and the president of the board. The General Assembly, by an act approved March 1, 1876, declared the trustees a body corporate, and the corporate name "The Board of Trustees of the University of Alabama." The sixth section of the act declares, that in addition to the rights, properties, privileges and franchises thereby expressly granted, "all rights, properties, privileges and franchises heretofore vested by any act of the General Assembly in the University of Alabama, shall continue and vest in the corporation as a part of the rights, privileges and franchises of the corporation under this charter." The 13th section is as follows : "That all laws, and parts of laws, enacted by the General Assembly, except sections 429, 430 and 1017 of the Revised Code, and acts passed by the General Assembly at its present session, and all acts, resolutions and regulations enacted or established by the Board of Education and Board of Regents relative to the University, its organization and government, shall expire on the adjournment of the first meeting of the board constituted by this act ; and all other laws in conflict with its charter are hereby repealed."

If we admit the legislative power, (a question this case does not involve), to dissolve the corporation created by the enactment of 1820, and to create a new one in its place, we are not of opinion the power was exercised by either the provisions of the constitution of 1868, or the act of March 1, 1876. The seminary of learning, established by the act of 1820, as the "University of Alabama," has continued in existence, and is recognized as existing by the constitution of 1868, and the subsequent legislation. The only effect and operation of the constitution of 1868, was to transfer its management and control from the Board of Trustees, to whom it was committed by the act of 1820, to the Board of Education as a Board of Regents. Whatever of corporate power the Board of Regents had, was not defined and declared by the constitution of 1868, or by subsequent legislation. It was derived by their succession to the corporate powers conferred by existing legislation on the trustees of the University. That corporation continued, and there was

simply a change in the style or corporate name, and the manner of electing and appointing the board of management and control. This is equally true of the act of 1876, which treats the University as an existing institution. It simply revises former legislation, super-adding such new corporate powers, rights and privileges, as were deemed necessary to advance the interests of the University; and the Board of Education having been abolished, re-establishes as its governing power, and the agency through which it was to act, a Board of Trustees. All the legislation and the provisions of the constitution of 1868, preserve the corporate identity of the University, as it was established by the act of 1820.

Nor is there found in the act of March 1, 1876, any indication of a legislative intent to absolve the corporation as reorganized, from any debt contracted, or liability incurred, under its former organization. With these the legislature had no purpose, if it had the power of interfering. These remained, if valid, as binding upon the corporation, as if a change in its board of management and control had not been rendered necessary by the abolition of the Board of Regents. It is not to be presumed from the general words of the 13th section, repealing "all acts, resolutions and regulations enacted or established by the Board of Education and Board of Regents relative to the University," that it was intended to impair the obligation of contracts which, in their corporate capacity, they had made. These words import an intention to repeal the acts of the Board of Education in its legislative capacity, and this was within legislative competency, furnishing no just cause of complaint by individuals upon any other ground than that of policy. The debts and engagements of a corporation, are not the subject of legislative repeal, though the change, or modification, or unconditional repeal of its charter may be within legislative power. When such power exists, an intention to interfere with corporate contracts is not to rest on inference or presumption.—*Broughton v. Pensacola*, 93 U. S. 266. In this case, it is said by Justice FIELD: "When, therefore, a new form is given to an old municipal corporation, or such a corporation is reorganized under a new charter, taking in its organization the place of the old one, embracing substantially the same corporators and the same territory, it will be presumed that the legislature intended a continued existence of the same corporation, although different powers are possessed under the new charter, and different officers administer its affairs; and, in the absence of express provision for their payment otherwise, it will also be presumed in such case that the legislature intended that the liabilities, as well

as the rights of property of the corporation in its old form, should accompany the corporation in its reorganization." And it is further said: "The principle which applies to the State would seem to be applicable to cases of this kind. Obligations contracted by its agents continue against the State, whatever changes may take place in its constitution of government." "Where a statute does not, in express terms," said this court in *State v. Mayor*, 24 Ala. 706, "annul a right or power given to a corporation by a former act, but only confers the same rights and powers under a new name, and with additional powers, such subsequent act does not annul the rights and powers given under the former act, and under its former name." And in *Ready v. Mayor*, 5 Ala. 336, it was held that a mere change in the corporate name, does not affect the rights or liabilities of a corporation. If the legislative act making the change, reserves these liabilities and rights, the reservation is no more than the affirmation of what the law would have implied in its absence.—See, also, *Madison College v. Burke*, 6 Ala. 496. It follows, from what we have said, that as the present Board of Trustees of the University have succeeded to the property, rights and privileges to which the Board of Regents succeeded; and as there has been no break in the continuity of the corporate existence of the University, they succeed also to their debts and liabilities. The legal remedies which could have been pursued against the Board of Regents, may now be pursued against the Board of Trustees.

It may be, and doubtless is true, that the legislative power of the Board of Education. could be exercised only in its annual sessions at the seat of government. But the adjustment of claims against the University pertained to it in its corporate capacity as a Board of Regents, and the adjustment could be properly made at the University when the Board was acting as a corporation.

Affirmed.