# Cox *v.* Board of Trustees of the University of Alabama.

## *Ejectment.*

(Decided May 13, 1909.   49 South. 814.)

1. *Public Lands; University Lands; When Title Passes.*—Title to the lands granted to the University by acts of Congress of April 23, 1884, passed when the selection was approved by the Secretary of the Interior rather than at the date of the act or of the patent.

2. *Same.*—The University of Alabama is a part of the state and the title to the lands granted by the United States for the benefit of the University is in the state as Trustee and the board of trustees is the agent of the state.

3. *States; Actions Against; Public Institutions; Property.*—Public institutions created by the state purely for charitable or educational purposes, together with all the property held by such institution are a part of the state and are not subject to be sued though their charters and the act incorporating them expressly provide that they may sue or be sued, since section 14, Constitution 1901, prohibits the state from being. made a party defendant in any court of law or equity.

5. *Same; Actions by; Limitation.*—Actions by the trustees of the University of Alabama to recover land granted the University in 1885, and held adversely since that time are governed by the provisions of section 2794, Code 1896, fixing the period of twenty years as the limitations for actions brought by the state for the recovery of property, and this notwithstanding the state holds such lands as trustees for the University.

6. *Limitation of Action; Applicable as to State.*—Unless the statute expressly so provides, the statute of limitations does not run against the state in actions to recover either real or personal property.

6. *Evidence; Judicial; Knowledge.*—The courts take judicial knowledge of the acts of the state legislature, and although it was not necessary to introduce them in evidence their receipt in evidence is not error.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. A. COLEMAN.

[Cox v. Board of Trustees of the University of Alabama.]

Ejectment by the board of trustees of the University of Alabama against John H. Cox. Judgment for plaintiff and defendant appeals. Affirmed.

GEORGE BONDURANT, and HENRY UPSOM SIMS, for appellant.—The statutes requiring claims to be filed in the probate office has no application where the lands are claimed by purchase or inheritance.—*Holt v. Adams,* 121 Ala. 664; *Bronson v. Hinton,* 142 Ala. 702; *Goodson v. Brothers,* 111 Ala. 589. His title became adverse as soon as title left the United States Government and passed into the state of Alabama.—*Ala. St. L. Co. v. Kyle,* 99 Ala. 478; *Woods v. Montevallo Co.,* 84 Ala. 560. Title to these lands passed into the state at the date of the passage of the act appropriating them to the University.—*Swann v. Lindsey,* 70 Ala. 578; *Schulenberg v. Harriman,* 21 Wall. 44. They certainly passed upon the location of the lands by the agent of the state.— *Higgins v. U. of A.,* 94 Ala. 293. The statute is ten years.—*Miller v. The State,* 38 Ala. 600; *Tenn. Co. v. Lynn,* 123 Ala. 112; *State v. Conners,* 69 Ala. 212; *Burks v. Mitchell,* 78 Ala. 61; *Ala. St. L. Co. v. Kyle, supra.*

HUGH MORROW, for appellee.—As to the nature of the title, see.—*Stringfellow v. T. C. I. & R. R. Co.,* 117 Ala. 250; *Higgins v. U. of A.,* 94 Ala. 380. The statute of limitations can not indirectly defeat the purpose of grant any more than could the state directly defeat such purpose by direct enactment of law.—*N. P. Ry. Co. v. Townsend,* 190 U. S. 267; *Murtaugh v. C. M. & St. P. Ry. Co.,* in MS. See 86 N. W. 1007. If the statute of limitations applies, it is twenty years and not ten.—Sec. 2794, Code 1896. The University is an arm of the government and a part of the state.—*State ex rel. v. Sowell,* 143 Ala. 494; *Trustees v. Winston,* 5 S. & P. 17;

[Cox v. Board of Trustees of the University of Alabama ]

*White v. Ala. I. H.,* 138 Ala. 479. It cannot be sued.—
*Ala. Indus. S. v. Adler,* 144 Ala. 555; *Same v. Reynolds,*
143 Ala. 579.

· MAYFIELD, J.—The appellee sued the appellant in
the statutory action of ejectment to recover certain
lands described in the complaint. By consent the de-
fendant disclaimed possession to all the lands except
one 40, and as to this 40 the trial was had upon the gen-
eral issue, which resulted in a verdict and judgment for
plaintiff, from which the defendant appeals, and as-
signs as error the giving of the general affirmative
charge for the plaintiff, and declining to give a similar
charge for the defendant, and admitting an act of the
Legislature of Alabama approved February 5, 1885
(Acts 1884-85, p. 109), in evidence. It appears from
the record that the only contest or dispute in the trial
that finally resulted was as to the defendant's right to
about 3 acres of the 40 acres of land in question; his
title and claim thereto being based upon the adverse
possession of himself and his father under whom he
claims title. It appears that the plaintiff's legal title
to the land in question was indisputably shown, except
as to these 3 acres, and as to that defendant's title or
claim was based solely upon that of adverse possession.
As stated by the learned counsel for appellee in his brief,
there are three fundamental questions involved in this
appeal, and upon a settlement of these necessarily de-
pend all other questions involved in this appeal: First.
Can title to the lands of the University of Alabama be
acquired by adverse possession? Second. If the title to
such lands can be so acquired, then what period of ad-
verse possession does the law require, 10 or 20 years?
Third. If the period be 10 years, then has appellant
shown a sufficient adverse possession to any of the lands
for that time to acquire title thereto?

Both the first and second propositions are very important and interesting questions, and we regret that they are not free from doubt; that is to say, they were not within the period of time covered by this action. The question has now been settled by statute (Code 1907, §§ 3859, 4830) ; but, of course, these do not apply to the case at bar. It is matter of common knowledge how the University of Alabama acquired title to its lands. They were acquired by acts of Congress and of the Legislature of Alabama. The particular lands in question were acquired as follows: By an act of Congress approved April 23, 1884 (23 Stat. 12, c. 27), which granted 46,080 acres of public lands in the state of Alabama to the state of Alabama, and provided for the selection and location of the same for the benefit of the University of Alabama, to be applied as far as may be necessary to the erection of suitable buildings of said University and the restoration of the library and scientific apparatus heretofore destroyed by fire. It is also a matter of common knowledge that a great number of the buildings and the library belonging to the University of Alabama were destroyed by fire during the Civil War by federal troops. These lands were selected and located by agents appointed for that purpose, which selection and location was approved by the Secretary of the Interior on May 25, 1885, and a patent issued from the United States to the state of Alabama for the lands so selected and approved, which vested title thereto in fee simple, subject to the disposal of the Legislature of Alabama as provided by the fourth section of the act of Congress, and with condition of the said act that the said lands are to be applied as far as may be necessary to the erection of suitable buildings for the said University and the restoration of the library and scientific apparatus destroyed by fire, and then to the endowment

of the State University, and to no other purposes what-
ever.   By an act of the Legislature approved February
5, 1885 (Acts 1884-85, p. 109), the state granted these
lands to the board of trustees of the University of Ala-
bama, which board was authorized to dispose of the
lands only for the purposes mentioned in the act of Con-
gress and in the manner directed by the act.   The de-
fendant's title or claim depended upon the following
facts:   In May, 1881, defendant's father applied at the
United States land. office at Montgomery, Ala., to pre-
empt certain public lands in the state of Alabama, and
pre-emption papers were issued to him for certain lands.
His father entered upon about three acres of the land
in question at that time, and remained in possession of
it until his death, keeping it under fence from the time
of his entry; but it must be remembered that this was
not a part of the land described in his pre-emption claim
but he had entered upon the same believing that it was,
and that the defendant had been in possession of the
land, claiming under his father, since the latter's death.

The exact date at which the title to the particular land
in question passed out of the United States into the state
of Alabama was May 25, 1885.   It did not, as contended
by counsel for appellant, pass at the date of the act of
Congress; for that act expressly provided, when the
selection of the lands is made and approved by the Secre-
tary of the Interior, then the title to the same shall vest
in the state of Alabama for the use and benefit of the
University of Alabama.   So by the express provision of
the act the title passed upon the date of the approval by
the Secreary of the Interior.   Nor did it pass on the date
of the patent, as contended by counsel for appellee.   The
patent in this case was a mere evidence of the grant.
The act of Congress, as well as the patent itself, shows
that the title passed from the United States into the

state of Alabama upon the date of the approval by the
Secretary of the Interior of the selection and location
of the lands, which is shown to be May 25, 1885.   The
patent thereto was issued by the United States to the
state of Alabama of the date of January 16, 1892; but
the legal title had passed by virtue of the act of Congress
upon the date of the approval of the selection by the
Secretary of the Interior, so the exact date at which the
statute of limitations could have begun to run against
the state was May 25, 1885.—*Williams Investment Co.
v. Pugh,* 137 Ala. 347, 34 South. 377.   The legal title
passed out of the state into the board of trustees of the
University of Alabama by virtue of an act of the Legis-
lature of Alabama approved February 5, 1885.   So this
finally fixes the date at which the statute could have
begun to run against the board of trustees of the Uni-
versity of Alabama.  Prior to that date the legal title
was in the state of Alabama.

   The University of Alabama was originally establish-
ed by act of the Legislature of December 18, 1820.   The
title of this act was "To establish a State University."
By an act of the Legislature of December 18, 1821, the
University of Alabama was incorporated.   On the 24th
day of December, 1822, the Legislature of Alabama pass-
ed an act to amend the act which incorporated the Uni-
versity of Alabama.   There were various other legisla-
tive acts of Alabama relating to the University, which
we find digested in Aiken's Dig. pp. 427- 436, and Clay's
Dig. pp. 583-589.   These laws or previous statutes re-
lating to the University, or a part thereof, were codified
and rewritten, and appear in the Code of 1852 as sec-
tions 383, 384, 547, 548, 834—852; but, by virtue of sec-
tion 10 of that Code, statutes or laws pertaining to the
University were not repealed by its adoption.   These
statutes, with various amendments, appeared in subse-

quent Codes—in the Revised Code of 1867 as sections 429, 430, 619, 620, 969, 1001-1024; in the Code of 1876 as sections 1295-1310; in the Code of 1886 as sections 1058-1073; in the Code of 1896 as sections 3667-3685. These statutes and Code provisions were also amended by Act Jan. 28, 1858 (Laws 1857-58, p. 279), by Act Feb. 21, 1866 (Laws 1865-66, p. 90), by Act Feb. 23, 1860 (Laws 1859-60, p. 25), by Act Jan. 30, 1861 (Laws 1861, p. 56), and by Act Feb. 6, 1858 (Laws 1857-58, p. 284).

The University is shown to be, not only an institution of the state created, provided for, and preserved by the legislative power thereof, but for nearly 100 years it has been the subject and care of constitutional provisions.

· The rights of the people of the state in and to this institution and the lands granted by Congress for its establishment, aid, and endowment have in some measure been protected by constitutional provisions.—Const. 1819, art. 6, among other things, provided: "The General Assembly shall take like measure for the improvement of such lands as have been or may be hereafter granted by the United States and by this state for the support of a seminary of learning, and the moneys which may be raised from such lands, by rent, lease or sale, or from any other quarters for the purpose aforesaid, shall be and remain a fund for the exclusive support of the State University for the promotion of the arts, literature and sciences; and shall be the duty of the General Assembly as early as may be to provide effectual means for the improvement and permanent security of the funds and endowment of such institution."—Const. 1861, art. 6, contained a similar provision. The revision and amendment of that Constitution by the constitutional convention of 1865 seems not to have disturbed this provision or otherwise provided for it.—see Const. 1865, art. 4, § 33. Const. 1868, art. 11, worked a complete

revolution and change in the educational system and institution of the state, in which the common schools and institutions of the state were placed under the exclusive management of a board of education, styled the "Board of Education of the State of Alabama," and among other provisions in that Constitution it provided (section 8) that the said board of education shall be a board of regents of the State University, with power to appoint president, faculty, etc. This board was given full legislative powers in reference to schools and educational institutions of the state, and when the acts of the board were approved by the Governor, or when re-enacted by two-thirds of the board in case of his disapproval, were given force and effect of law, unless repealed by the General Assembly. This instituted the reconstruction period of schools and educational institutions in this state. Consequently not only the management and control of the institutions, but also its lands, property, and other funds, came under the exclusive jurisdiction of this board of education. The University was, however, reorganized and redeemed from the reconstruction regime by an act of the Legislature of March 1, 1876 (Laws 1875-76, p. 268), which was codified and appeared in the Code of 1876 as sections 1295-1310. The Constitution of 1875 likewise provided that the University should be under the management and control of a board of trustees and provided for the election thereof. —Const. 1875, art. 13, § 9. Const. 1901, art. 14, § 264, likewise provided that the State University shall be under the management and control of a board of trustees, and provided that the board shall be a self-perpetuating body, and provided (section 265) for the sum of not less than $36,000 per annum as interest on the funds of the University of Alabama theretofore converted into the treasury for the maintenance and support of the

[Cox v. Board of Trustees of the University of Alabama ]

institution, and provided that the military system should be abolished.

These statutes and constitutional provisions show the history of the University of Alabama; but the origin and foundation stones of the University of Alabama depend upon acts of Congress (Act April 20, 1818, c. 126, § 2, 3 Stat. 467, and Act March 2, 1819, c. 47, § 5, 3 Stat. 491) for the benefit of the University of Alabama. These acts of Congress enabled the people of Alabama Territory to form a Constitution and state government and for the admission of the state of Alabama into the Union, and in that the act required "that 36 sections or one entire township be designated by the Secretary of the Treasury under the direction of the President of the United States," and, together with the one heretofore reserved for that purpose, shall be reserved for the use of a seminary of learning and vested in the Legislature of the state of Alabama, to be appropriated solely to the use of such seminary by the said Legislature. Judge Brickell, speaking of the origin, history, powers, and obligations of the University of Alabama in the case of *Trustees of the University v. Moody,* 62 Ala. 394, Says: "If we admit the legislative power (a question this case does not involve), to dissolve the corporation created by the enactment of 1820 and to create a new one in its place, we are not of opinion the power was exercised by either the provisions of the Constitution of 1868 or the act of March 1, 1876. The seminary of learning established by the act of 1820 as the University of Alabama has continued in existence and is recognized as existing by the Constitution of 1868 and the subsequent legislation"—holding that all of the subsequent legislation and constitutional provisions simply ratified former legislation, superadding new corporate powers, rights, and privileges, changing the governing board and

personnel of the management and the agencies through which the University could act; that they were simply new terms given to old corporations; that the corporation of the University was therefore in a large sense a public corporation, rather than a private corporation; and that although the legislative power could not divert from its use the donation of the lands made by Congress or those of individuals, yet it could alter, amend, vary, or enlarge the original act of incorporation. It is clear from this and other authorities that the various boards of trustees of the University of Alabama, etc., are but agents appointed by the state to manage the affairs of the University of Alabama; that, while the name of the agency has been several times changed, the legal entity of the University of Alabama has remained all the while. It therefore clearly appears that the University of Alabama, by whatever corporate name or under the control of whatever agents it may be, is a part of the state; that it was founded by the state; that it is under the state control, and that the University is therefore a public municipal corporation; that as to its lands the state is and has always been the trustee; and that the board of trustees are mere agents of the state.—*Winston's Case*, 5 Stew. & Port. 17; *Bullock v. Governor*, 2 Port. 484.

It was decided by this court in the case of *White v. Alabama Insane Hospital*, 138 Ala. 479, 35 South. 454, that the hospital was a mere state agency created for the purpose of caring for and treating the unfortunate in insane citizens of the state—purely a governmental function, wise and beneficial. It was also decided by this court in the case of *Ala. Girls' Industrial School v. Reynolds*, 143 Ala. 579, 42 South. 114, that this school, popularly known as "Montevallo School," is a mere agency of the state, and that all of its property is own-

[Cox v. Board of Trustees of the University of Alabama.]

ed by the state, and that an action against it is substantially an action against the state. This case was affirmed, and, if possible, made stronger, by the decision of this court in the case of *Same School v. Addler*, 144 Ala. 555, 42 South. 116, 113 Am. St. Rep. 58. The cases above referred to settle the law in this state that public institutions created by the state purely for charitable or educational purposes are a part of the state, or a mere agency of the state; that the property of such corporations is really and in fact the property of the state, and that they are not subject to suit under section 14 of the Constitution of 1901, which prohibits the state from being made a party defendant in any court of law or equity, although the charters and acts of the Legislature incorporating such institutions expressly provide that they may sue and be sued as an individual; and in the case of Reynolds the decision goes to the extent of holding that in a suit in chancery by a corporation against an individual, seeking to state an account and to charge him with the funds of the institution received by him as president of such institution, he, as respondent in such case, cannot maintain a cross-bill in such suit, for the reason that it would be in violation of the Constitution and would be in effect a suit against the state.

If this be true of the Alabama Insane Hospital and the Alabama Girls' Industrial School, which are purely of statutory creation and of recent date as compared with the University of Alabama, how much more so must it be of the University of Alabama and of its lands, some of which it acquired before the state was admitted into the Union. Others were acquired at the same time the state was admitted, and one of the conditions upon which the state was admitted was that it should forever maintain and protect these lands as a trustee for this in-

[Cox v. Board of Trustees of the University of Alabama ]

stitution, and which has been the subject of care of every Constitution of this state from that of 1819 to that of 1901. And it therefore seems impossible to escape the conclusion that the University of Alabama is a part of the state, and, as said by Judge Brickell, it is doubtful if the state through its agents could destroy or divert the funds and lands granted or donated to the institutions in the manner and form in which these lands and funds are shown to have been granted. If no action can be brought against the Alabama Insane Hospital, or against the Alabama Girls' Industrial School, though the charter or act of the Legislature incorporating such institutions expressly authorize such actions, then it would seem to follow certainly that the laws regulating suits by the state should apply to the University of Alabama, and that all remedies and defenses applicable to the state should be applicable to the University, and if it requires 20 years to bar an action by the state to recover lands of the state, then it would require the same time to bar an action by the University of Alabama in its corporate capacity to recover its lands.

It may be said to be settled law, and so far as we know without conflict, that the statute of limitations, unless the statute expressly so provides, does not run against the state, and that this applies to real or personal actions. It is also well settled that in actions brought in the name of the state, which inure exclusively to or for the benefit of the individual, or of a private corporation in which the state has no real interest in the litigation, then the statute of limitations does not run against such action.—*Miller v. State,* 38 Ala. 600; *United States v. Beebe,* 127 U. S. 338, 8 Sup. Ct. 1083, 32 L. Ed. 121. It is also settled law that where the action is for the benefit of the state, although not brought in the state's name, the defense of the statute of limitations is not

[Cox v. Board of Trustees of the University of Alabama ]

available unless authorized by statute.—*Commonwealth v. Baldwin,* 1 Watts (Pa.) 54, 26 Am. Dec. 33; *Bank v. Brown,* 2 Ill. 106; *Wasteney v. Scott,* 58 Ohio St. 410, 51 N. E. 34.   It would therefore seem to follow that where an institution exists purely for governmental purposes is such a public corporation, when thus governed and controlled by the state, and when it acts exclusively as an agent of the state for the education or protection of the people and for the promotion of the best interests of the children of the state, an institution which has no stockholders, no parties who have any interest in it or its affairs, further than for the administration of the duties imposed upon them by law as agents or officers of such institution, the statute of limitations is not applica‐ble as a defense in actions brought   in the   corporate name of such institution, unless the defense is available in similar actions brought by the state for its own use and benefit.

Our statute of limitations, from the adoption of the Code of 1852 to the adoption of the Code of 1907, author‐izes the defense of the statute of limitations of 20 years in actions brought by the state for the recovery of real or personal property.—Section 2794 of the Code of 1896; section 2475 of the Code of 1852.   Owing   to various amendments of our statute of limitations, the difference in the statute at the time of the rendition of the various decisions of this court, there is an   apparent   conflict, though it is probably not real.   It may therefore be of interest, if not of information, to briefly state a history of this statute.   The statute of limitations was fixed at 20 and 30 years as it first appeared in Aiken's Dig. p. 270, and Clay's Dig. p. 327, with no reference to actions by the state.   So the first time the statute of limitations was made applicable to the state was by the Code of 1852, which provided that the limitation for actions at

[Cox v. Board of Trustees of the University of Alabama.]

the suit of the state against a citizen thereof for the recovery of real or personal property was 20 years. While this statute was in operation the Supreme Court, through Walker, J., in the case of *Miller v. State,* 38 Ala. 600, held that the statute above referred to only applied to causes of action accruing prior to the 17th day of January, 1853, when that section went into effect; and in that case it was decided that the statute of 20 years did not apply to suits brought in the name of the state for the use of a particular township to recover land which constituted a part of the sixteenth section. This case was decided in 1863, and probably called forth the second subdivision of the statute as it first appeared in the Code of 1886 as section 2613, which fixed the statute of limitations for the recovery of sixteenth section lands at 20 years, which continued to be the law from the adoption of the Code of 1886 to the adoption of the Code of 1907.

Justice Somerville, in the case of *Wyatt v. Tisdale,* 97 Ala. 594, 12 South. 233, referring to this statute, through an oversight, the exact question not being under consideration, said that the statute as it then existed, which was in 1896, had existed since the Code of 1852, which as to the second subdivision was an oversight. This oversight was discovered and attention called to it by Tyson, J., in the case of *Tenn. Co. v. Linn,* 123 Ala. 112, 26 South. 245, 82 Am. St. Rep. 108. This section was also amended by Act Nov. 30, 1876 (Laws 1876-77, p. 102), which provided that the statute of limitations of 10 years should not apply to actions for the recovery of sixteenth section lands. This, as recited by Justice Tyson, was codified as a part of section 3225 of the Code of 1876, and remained the law until the adoption of the Code of 1886. So it appears that this court has decided that the statute of limitations of 20 years

[Cox v. Board of Trustees of the University of Alabama.]

provided for in actions by the state did not apply to actions brought nominally by the state for the recovery of sixteenth section lands, which decision was put upon the ground that the state, though a nominal party on the record, had no real interest in the litigation, but its name was used as a means of enforcing the rights of a third person, who alone would enjoy the benefits of the recovery, holding that the suit was substantially between the township and the defendant, and that in all actions where the suit was brought in the name of one person for the use of another the beneficiary must be considered the sole party of record. If this exact question was now before us for consideration, we are not sure that we would be willing to follow it.

But, however that may be, we think that case is distinguishable from a case involving, as this does, title to the lands of the University. It will be noticed that the language of the grants by Congress of the sixteenth section lands for school purposes and the language of the grants conveying the lands to the state for the use of the University is different, and consequently the cases might be distinguished upon that ground. The language of the grant of Congress passed March 2, 1819, as to the sixteenth section lands, is as follows: "That the section numbered 16 in every township * * * shall be granted to the inhabitants of such township for the use of the schools;" whereas by the same act of Congress the grant of the University lands was that the lands should be vested in the Legislature of the state of Alabama, to be appropriated solely to the use of such seminary by the Legislature; whereas, the grant as to the lands in question, approved April 23, 1884 (Act April 23, 188, c. 27, 23 Stat. 12), is to the state of Alabama for the benefit of the University of Alabama, etc. It is true, as said by Judge Walker in *Miller's Case,* that the Supreme Court

of Alabama, in the case of *Long v. Brown,* 4 Ala. 629, decided that the grant was in perpetuity to the inhabitants of the township, and that the legal title to the land was in the state in trust for the inhabitants. This decision in *Long v. Brown* may be correct, and it may not be correct. No doubt that by the grant and a subsequent statute there was a trust created as to such lands; but it certainly cannot be said that the legal title passed from the United States into the state of Alabama as it did by the grants of the University lands; and, as is further said by Judge Walker in *Miller's Case* that a similar grant (referring to the sixteenth section grant) had been held by the Supreme Court of Indiana not to pass the legal title to the state, but to invest the legal title in the inhabitants of the township as soon as they acquired legal capacity to take it, citing, also, the case of *Trustees v. State,* 14 How. 274, 14 L. Ed. 416, which seems to hold with the court of Indiana, and the learned judge makes it clearly to appear that by his decision in *Miller's Case,* while he did not commit himself to the case of *Long v. Brown,* 4 Ala. 629, nor to the Indiana case, yet in the case at bar it was certain that the beneficial owner of the property was the township, and that the suit in question was for the benefit of the inhabitants of that particular township, and was therefore not within the statute of 20 years for actions by the state.

*Miller's Case* was reaffirmed in the case of *Wyatt v. Tisdale,* 97 Ala. 594, 12 South. 233, in which Somerville, J., placed the decision upon the ground that the sixteenth section lands were held in trust by the state, but not as property of the state. But, as we have seen in the case of University lands, the legal title passed to the state by virtue of the grant and the selection and approval by the Secretary of the Interior. While the trust was imposed upon the lands, the legal title to the same

was in the state. It is true that in the case at bar the
state granted the legal title to these lands to the board
of trustees of the University of Alabama; but the grant
in that case was only for the purposes and objects im-
posed by Congress in the original grant and mentioned
in the acts of the Legislature of Alabama which consti-
tuted the grant. While for some purposes they were
then the lands of the University, we think we have shown
on both reason and authority that they were still the
lands of the state, and though the action was nominally
brought in the name of the trustees of the University of
Alabama, it was as much the suit of the state as if it
had been brought in the name of the state, or by the At-
torney General or any other officer or agent authorized
or empowered to bring a suit in his own name for the
recovery of the land.

It therefore follows that under the Code of 1896 the
statutory period for the recovery of the University lands
is 20 years, the same as other proceedings by the state.
While the argument of counsel for appellee is very per-
suasive that the statute of limitations should not run as
against the lands of the University of Alabama, because
they were granted for the specific purpose, that the
state could not dispose of them except for that purpose,
and that the state should not be allowed to do indirectly
what is forbidden from doing directly. To use his lan-
guage: "Can the state say to a squatter: I cannot sell
you that land; but, if you will stay on it without my
knowledge for a given number of years, it is yours?"
The statute of limitations cannot indirectly change the
purpose of the grant. Judge Brickell intimates the
same in a dictum in the case of *Trustees of the Universi-
ty v. Moody*, 62 Ala. 393, in which, speaking of the Uni-
versity, he says that it is in a large sense a public rather
than a private corporation, though the legislative power

may not divert from its use the donation of the lands made by Congress, or the donations of individuals, etc., citing a decision of the Supreme Court of the United States which holds the same opinion. Yet we are unable to escape from or avoid the conclusion that in an action of ejectment, in which the legal title only can be inquired into, prior to the Code of 1907, 20 years' adverse possession would defect an action of ejectment by the state or by the University for the recovery of the University lands. But for the statute of limitations it would not: but with the statute of limitations it would. The grant by the Congress of the land in question was made while our statute of limitations of 20 years as to suits by the state was in force. Congress must be presumed to have known of this statute of so long duration, and no one can doubt the authority of the Legislature to make the statute of limitations apply to suits by the state.

It is a cardinal rule that the statute of limitations, unless so expressed, does not run against the state; but it is equally a cardinal rule that they do run against the state, if so expressed. The state could certainly by grants dispose of this land for legitimate purposes. It could authorize the board of trustees to dispose of them for legitimate purposes. The acts of Congress and of the Legislature have authorized such dispositions, and, when they have been disposed of in the manner provided by the acts of Congress and of the Legislature, the objects and purposes or motive which caused the grant cannot be inquired into in a court of law in an action of ejectment, in which purely equitable defenses cannot avail. It may be conceded that the state by its grants, or in passing the statute of limitations, which might defeat the title of these lands may have violated its trust, yet it has been uniformly held by this court that a deed by a trustee in violation of his trust nevertheless conveys

[Cox v. Board of Trustees of the University of Alabama.]

legal title and is valid in a court of law.—*Robinson v.
Pierce,* 118 Ala. 273, 24 South. 984, 45 L. R. A. 66, 72
Am. St. Rep. 160.   So, then, it appears that, so far as
the legal title is concerned, a grant by the state would
be valid, though it was in breach of its trust.   This be-
ing true, the statute of limitations must prevail, not-
withstanding the trust imposed upon the state and the
board of trustees by virtue of the grants of this land.

These two questions being disposed of renders it un-
necessary to pass upon the third question, whether the
appellant has shown a sufficient adverse possession of
the lands to acquire title thereto, for the reason that
the statute of limitations could not begin to run until
after the 25th day of May, 1885, and as the period of
limitations is 20 years, and the action was begun on the
16th day of March, 1904, the limitations of 20 years had
not expired, which was necessary in order to confer title
upon appellant such as to defeat the action of ejectment.

It therefore follows that the general affirmative charge
was properly given for the plaintiff.   There could be no
error in the court allowing the act of the Legislature of
Alabama, relating to the lands, the subject-matter of
the suit, to be introduced in evidence.   The court would
take judicial knowledge of the act, while its introduction
in evidence was not necessary, it was proper, and could
not be error.

The judgment of the lower court is affirmed.

Dowdell, C. J., and Simpson and Anderson, JJ.,
concur.