256 So.2d 281

In re Willie Pearl **HUTCHINSON**

**v.**

**BOARD OF TRUSTEES OF UNIVERSITY OF ALABAMA d/b/a "The University of Alabama Hospitals and Clinics," a Division of Board of Trustees of the University of Alabama.**

**Ex parte Willie Pearl Hutchinson.**

**6 Div. 882.**

Supreme Court of Alabama.

Nov. 11, 1971.

Rehearing Denied Jan. 20, 1972.

Jones, Propst & Topazi and Corley & Church, Birmingham, for petitioner.

Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, for respondent.

MADDOX, Justice.

Petitioner, Willie Pearl Hutchinson, plaintiff in the trial court, and appellant in the Court of Civil Appeals, filed her petition for certiorari in this Court to review the opinion of the Court of Civil Appeals, 47 Ala.App. 460, 256 So.2d 279. We concluded that there was probability of merit in the petition and issued the writ. Briefly, the facts are as follows:

Petitioner, an expectant mother, entered University Hospital in Birmingham, as a paying patient, to give birth to her child. Upon her discharge from the hospital, she was given a baby to take home. Three days later, the hospital contacted her and told her to bring the baby back to the hospital. Upon her return to the hospital, she learned for the first time that the child she had been given was not her own. She sued the Board of Trustees of the University of Alabama, d/b/a The University of Alabama Hospitals and Clinics, for breach of contract.

Defendant filed a plea in abatement to her complaint and claimed governmental immunity from suit on the ground that it was an instrumentality of the State and was not subject to being sued. The trial court treated the plea in abatement as a demurrer and sustained it, whereupon the plaintiff took a non-suit which was the basis of the appeal to the Court of Civil Appeals. Willie Pearl Hutchinson, the petitioner, claims that the Court of Civil Appeals erroneously held that she could not maintain her action against the Board of Trustees of the University of Alabama because of the "governmental immunity" provision of our State Constitution. Constitution of Alabama, 1901, Section 14. Petitioner further says that our State Constitution which permits the State of Alabama to file suits against its citizens and does not allow suits against itself is violative of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

After careful and diligent study of the law of "governmental immunity," we are convinced that, even though the rule has been criticized as being harsh and archaic, the people of Alabama have put it in their Constitution and this Court, in prior decisions, had interpreted the "governmental immunity" provision on several occasions and has arrived at the same conclusion as did the Court of Civil Appeals.

We are aware that some jurisdictions have judicially abandoned the rule of governmental immunity in cases involving the operation of hospitals [1] and at least one court has held that governmental immunity does not square with the protection given to citizens against state action by the Fourteenth Amendment to the Constitution of the United States,[2] and the rule has been severely criticized as being unjust,[3] but even some of those who are critical of the rule of governmental immunity apparently recognize that in Alabama a constitutional amendment would be required to permit legislative implementation of a tort claims system of compensation on the *state*

1. Carroll v. Kittle, 203 Kan. 841, 457 P.2d 21 (1969); Muskopf v. Corning Hospital Dist., 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961). It is interesting to note that in the Kansas case and the California case that each respective State Legislature took some action to vary the effect of each court decision. California suspended the right to maintain tort suits for a period. See Corning Hosp. Dist. v. Superior Court of Tehama Co., 57 Cal.2d 488, 20 Cal. Rptr. 621, 370 P.2d 325 (1962); the 1970 Kansas Legislature responded to Carroll v. Kittle by the enactment of a statute (K.S.A.1970 Supp. 46–901) grant-

ing immunity to the State of Kansas, its boards, commissions, departments, agencies, bureaus and institutions. Consequently, the broad-sweeping effect of the *Carroll* decision was of short duration. See Woods v. Kansas Turnpike Authority, 205 Kan. 770, 472 P.2d 219 (1970).

2. Krause v. Ohio, Ohio Court of Appeals, September 30, 1971, 274 N.E.2d 321.

3. See Borchard, Government Liability in Tort, 34 Yale L.J. 229; Copeland and Screws, Governmental Responsibility for Tort in Alabama, 13 Ala.L.R. 296.

*level.* See Copeland and Screws, Governmental Responsibility for Tort in Alabama, 13 Ala.L.R. 296, 341.

During the early years of our history as a State our rule of state governmental responsibility was directly opposite from what it is today. Our first Constitution provided:

"The general assembly shall direct, by law, in what manner, and in what courts, suits may be brought against the State." Ala.Const. Art. 6, § 9 (1819).

The constitutional mandate of 1819 remained unchanged until the Constitution of 1865 was adopted when the provision granting a right to sue the state was changed to read:

"That suits may be brought against the State, in such manner, and in such courts, as may be by law provided."

In 1875, the Legislature repealed all acts granting the right to sue the State, and the Constitution of 1875 contained a provision, that "The State of Alabama shall never be made defendant in any court of law or equity." Section 15, Const. of Alabama, 1875. Section 14 of the 1901 Constitution is the same as Section 15 of the 1875 Constitution. The adoption of the 1875 Constitution closed the door to litigants who had claims against the State, and the door has remained closed continuously by subsequent constitutional provisions and court decisions interpreting those provisions.

Section 14 of the Alabama Constitution of 1901 specifically prohibits the State from being made a party defendant in any suit at law or in equity. This Court, construing Section 14, has held almost every conceivable type of suit to be within the constitutional prohibition.[4]

In Cox v. University of Alabama, 161 Ala. 639, 49 So. 814 (1909), this Court held that public institutions created by the State *purely* for charitable or educational purposes are a part of the State and are not subject to be sued, since Section 14, Constitution of 1901, prohibits the state from being a party defendant in any court of law or equity. The use of the words "purely for charitable or educational purposes" in Cox v. University of Alabama, supra, would seem to indicate that the Court was making a distinction between what might be classified as a "governmental" function as opposed to a proprietary one. Later decisions of this Court, however, would indicate that to place emphasis upon the word "purely" used by this Court in Cox, would probably be more fanciful than real since this Court has held on many occasions that the operation of a hospital, even though paying patients are accepted, is a "governmental function." See Jenkins v. Houston County Hospital Board, 284 Ala. 180, 223 So.2d 583 (1969); Thompson v. Druid City Hospital Board, 279 Ala. 314, 184 So.2d 825 (1966); Clark v. Mobile County Hospital Board, 275 Ala. 26, 151 So.2d 750 (1963); Garrett v. Escambia County Hospital Board, 266 Ala.

4. Illustrative cases where the "governmental immunity" doctrine was applied to prevent redress against the "State" include:
STATE HIGHWAY DEPARTMENT
Employers Ins. Co. v. Harrison, 250 Ala. 116, 33 So.2d 264 (1947) (killed highway employee); Barlowe v. Employers Ins. Co., 237 Ala. 665, 188 So. 896 (1939) (injured highway employee).
STATE DOCKS DEPARTMENT
State Docks Commission v. Barnes, 225 Ala. 403, 143 So. 581 (1932), overruling the effect of Standard Oil v. United States, 25 F.2d 480 (D.C.S.D. Ala., 1928).

See also Centraal Stikstof Verkooppantoor N.V. v. Ala. St. Docks Dept., 415 F.2d 452 (1969) (5 Cir.), (docks alter ego of State and waiver of governmental immunity held to be a question of state law).
STATE SCHOOLS, HOSPITALS AND MENTAL INSTITUTIONS
White v. Ala. Insane Hosp., 138 Ala. 479, 35 So. 454 (1903);
Ala. Girl's Industrial School v. Adler, 144 Ala. 555, 42 So. 116 (1905);
Ala. Girl's Industrial School v. Reynolds, 143 Ala. 579, 42 So. 114 (1904).
Cox v. University of Alabama, 161 Ala. 639, 49 So. 814 (1909).

201, 94 So.2d 762 (1957); Moore v. Walker County, 236 Ala. 688, 185 So. 175 (1938); Laney v. Jefferson County, 249 Ala. 612, 32 So.2d 542 (1947).

The case of Paul v. Escambia County Hospital Board, 283 Ala. 488, 218 So.2d 817 (1969) is the only chink in the "governmental immunity" wall and must be left standing alone for the proposition that a *county* may be sued for a breach of contract but not for a tort. In *Paul*, the action was against an agency of the .*county*. Here, the action, even though attempting to follow the allegations of the *Paul* case to state an action in contract, is one against an agency of the *State*.

█ The wall of "governmental immunity" is almost invincible, made so by the people through their Constitution as interpreted by this Court. Our cases are clear that the operation of a hospital is a "governmental function," but even if we should classify the operation of University Hospital as being a "business function," nevertheless, the State could not be sued. In a suit against the State Docks, this Court held in State Docks Commission v. Barnes, 225 Ala. 403, 143 So. 581 (1932) that the State cannot be sued indirectly by suing its officers or agents in their official capacity when a result would be directly to affect the financial status of the State Treasury, even if the State is engaged in performing a business or corporate power.

In *Garrett, Thompson* and *Jenkins,* several members of this Court intimated that the rule of governmental immunity might not reflect their own personal or private views, and they suggested that the Legislature might desire to accept the challenge. The Legislature has not changed the rule.

We must have a reasonable respect for the doctrine of stare decisis and the division of powers between the Executive, Legislative and Judicial branches of our government. Alabama may one day return to the rule of governmental responsibility with which we began as a State. The fre-

quency of the appeals to this Court asking that the rule be changed is some evidence that the constitutional provision granting governmental immunity may have served whatever purpose it was intended to serve and maybe it should not be abandoned. But that is a question addressing itself to the Legislature in initiating and proposing an amendment to the Constitution. The Legislature already has power, without necessity for a constitutional change, to adjust claims against the State.

The Legislature, when it deems necessary, can pass relief bills to compensate individuals who have been harmed. In fact, the Legislature now provides some relief to persons injured by appropriating money to the State Board of Adjustment for payment of claims against the State. Title 55, §§ 333–344, Code of Alabama, 1940 (Recomp.1958). See The Alabama State Board of Adjustment and the Law, 19 Ala.Law. 397 (1958). Therefore, a claimant is not completely without some recourse if he suffers injury because of the action of State officials in carrying out their duties.

After review, we find no error in law in the opinion of the Court of Civil Appeals concerning the doctrine of governmental immunity.

█ We now come to the question raised by the petition that federal rights guaranteed to petitioner have been infringed. Petitioner contends that she has been deprived of equal protection of the law under the Fourteenth Amendment to the Constitution of the United States. We find no merit in this contention. In Palmer v. Ohio, 248 U.S. 32, 39 S.Ct. 16, 63 L.Ed. 108 (1918), the Supreme Court of the United States, in an action wherein the plaintiffs had sued the State of Ohio for damages for flooding lands by elevating the spillway of a state-maintained dam, said:

"The right of individuals to sue a State, in either a federal or a state

court, cannot be derived from the Constitution or laws of the United States.

It can come only from the consent of the State. Beers v. Arkansas, 20 How. 527, 15 L.Ed. 991; Railroad Company v. Tennessee, 101 U.S. 337, 25 L.Ed. 960; Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842. Whether Ohio gave the required consent must be determined by the construction to be given to the constitutional amendment quoted, and this is a question of local state law, as to which the decision of the State Supreme Court is controlling with this court, no federal right being involved. Elmendorf v. Taylor, 10 Wheat. 152, 159, 6 L. Ed. 289; Old Colony Trust Co. v. Omaha, 230 U.S. 100, 116, 33 S.Ct. 967, 57 L.Ed. 1410; Memphis Street Ry. Co. v. Moore, 243 U.S. 299, 301, 37 S.Ct. 273, 61 L.Ed. 733."

Section 14 of the Alabama Constitution operates equally against *all persons* and therefore cannot be discriminatory. The concept of equal protection has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 72 L.Ed.2d 506, reh. den. 379 U.S. 870, 85 S.Ct. 12, 13 L.Ed.2d 76. There is no showing here that the petitioner was treated any differently than other persons standing in the same relation to the governmental action she questions. Therefore, no unequal treatment is shown and no federal right is violated.

After review, we are convinced that the judgment of the Court of Civil Appeals is due to be affirmed.

Affirmed.

MERRILL, HARWOOD and BLOODWORTH, JJ., concur

HEFLIN, C. J., concurs in the result.