BOLIN, Justice
(dissenting).
At the outset, I must express my extreme disappointment in this Court’s delay in ruling on this application for rehearing. The original opinion, which I authored, was issued on January 14, 2011, %nd the application for rehearing was timely filed on January 27, 2011. On July 7, 2011, the case was transferred from my office.
Rule 40(a), Ala. RApp. P., provides that a party who has not prevailed may apply for rehearing.
“This Court invites applications for rehearing because we are the court of last resort in virtually every case that comes before us. Rule 40(b), Ala. R.App. P., therefore states in relevant part: ‘The application for rehearing must state with particularity the points of law or the facts the applicant believes the. court overlooked or misapprehended.’ The operative words are ‘overlooked’ and ‘misapprehended.’ We grant application for a rehearing in a rather narrow range of cases. A rehearing is not an opportunity to raise new issues not addressed on original application. See Town of Pike Road v. City of Montgomery, 57 So.3d 693, 694 (Ala.2006) (opinion on application for rehearing) (‘As a general rule, the Court does not consider matters raised for the first time in an application for rehearing.’ (citing Morgan Keegan & Co. v. Cunningham, 918 So.2d 897, 908 (Ala.2005))); Riscorp, Inc. v. Norman, 915 So.2d 1142, 1155 (Ala.2005)(opinion on application for rehearing)(‘“The well-settled rule of this Court precludes consideration of arguments made for the first time on rehearing.” ’ (quoting Water Works & Sewer Bd. of Selma v. Randolph, 833 So.2d 604, 608 (Ala.2002))); and Kirkland v. Kirkland, 281 Ala. 42, 49, 198 So.2d 771, 777 (1967) (‘We cannot sanction the practice of bringing up new questions for the first time in application for rehearing.’). Nor is an application for rehearing an invitation to reargue the issues already thoroughly considered on original application. See Willis v. Atlanta Cas. Co., 801 So.2d 837, 838 (Ala.2001) (overruling an application for rehearing when it was ‘simply an earnest reiteration of the appellant’s original brief)(Johnstone, J., concurring specially). Instead, this Court invites an application for a rehearing so that we may be informed of a fact or a point of law that we have ‘overlooked’ or one that we have ‘misapprehended.’ ”
Chism v. Jefferson Cnty., 954 So.2d 1058, 1106-07 (Ala.2006) (See, J., concurring specially on application for rehearing). With the relatively narrow grounds for granting an application for rehearing, there is no justification for the inordinate delay in ruling on this application for rehearing. Not only have the parties been in a state of uncertainty, undoubtedly other patients have been treated at a Baptist Medical Center facility without a final resolution of the issues involved. Furthermore, in the time that has elapsed since our original opinion was issued on January 14, 2011, there have been numerous changes to the membership of this Court, and the delay in ruling on the application could erroneously appear to be outcome driven. Although I am certain that the delay was not a product of judicial machinations, I must note that such a lengthy delay appears improper and that the mere appearance of impropriety reflects poorly *427 on past and current members of this Court.
That being stated, I now turn to the issue of sovereign immunity. The Healthcare Authority for Baptist Health d/b/a Baptist Medical Center East, also known as the Healthcare Authority for Baptist Health, an affiliate of UAB Health System d/b/a Baptist Medical Center East (hereinafter “the Authority”), argues that State immunity under § 14, Ala. Const.1901, also known as sovereign immunity, acts as a jurisdictional bar in this case.[27]
Section 14 provides that the State “shall never be made a defendant in any court of law or equity.” Neither the legislature nor this Court has the power to waive the State’s immunity from suit. Sovereign immunity provides protection to the State and State-related agencies. The immunity from suit provided by § 14 extends to State universities. Rigby v. Auburn Univ., 448 So.2d 345, 347 (Ala.1984) (“[W]e conclude that because of the character of the power delegated to it by the state, its relation to the state as an institution of higher learning, and the nature of the function it performs as an institution of higher learning, Auburn University is an instrumentality of the state and therefore immune to suit by the terms of Section 14 of our state constitution.”); Taylor v. Troy State Univ., 437 So.2d 472 (Ala.1983) (holding that State immunity extends to the State’s institutions of higher learning); Harman v. Alabama Coll., 235 Ala. 148, 177 So. 747 (1937) (holding that the legislature could create a college as a public corporation with the right to sue and to contract, to acquire and to hold real property, that the public corporation so created could incur debt without violating § 213 of the Alabama Constitution, and that the college was immune from suit); Alabama Girls’ Indus. Sch. v. Reynolds, 143 Ala. 579, 42 So. 114 (1905) (holding that school was entitled to immunity from suit under the Alabama Constitution notwithstanding fact that creating statute provided that the school could be sued).
The operation of a hospital by a State university falls within the realm of sovereign immunity. Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013 (Ala.2003) (holding that sovereign immunity protected State-university hospital from insurer’s suit to stop practice of billing more that it would accept as full satisfaction from Medicare or other insurers); Sarradett v. University of South Alabama Med. Ctr., 484 So.2d 426 (Ala.1986) (holding that county hospital acquired by university was entitled to sovereign immunity where agreement provided that university desired to operate the hospital as part of its college of medicine and fact that agreement provided that the university would operate the hospital as a public hospital did not deprive the entity of immunity as a subdivision of a State university); and Hutchinson v. Board of Trs. of the Univ. of Alabama, 288 Ala. 20, 256 So.2d 281 (1971) (recognizing that the operation of a university hospital is a governmental function and that even if operating a university hospital was a business function, the State *428 could not be sued because the result of allowing a suit would be to directly affect the financial status of the State treasury).
In Armory Commission of Alabama v. Staudt, 388 So.2d 991 (Ala.1980), the Court set out the test to determine if an entity is part of the State and therefore entitled to sovereign immunity:
“Whether a lawsuit against a body created by legislative enactment is a suit against the state depends on the character of power delegated to the body, the relation of the body to the state, and the nature of the function performed by the body. All factors in the relationship must be examined to determine whether the suit is against an arm of the state or merely against a franchisee licensed for some beneficial purpose.”
388 So.2d at 993.
In the present case, the issue is whether a health-care authority established by a State university operating a medical school is entitled to sovereign immunity. A brief history of the statutes allowing for the creation of health-care authorities is necessary. In 1945, the legislature authorized the creation of public-hospital associations by local governing bodies. Title 22, Art. 3 (now § 22-21-50 et seq., Ala.Code 1975). In 1949, the legislature provided for the creation of county hospital corporations. Title 22, Art. 4 (now § 22-21-70 et seq., Ala.Code 1975). In 1961, the legislature enacted Title 22, Art. 5 (now § 22-21-130 et seq., Ala.Code 1975), to allow the creation of municipal hospital-building authorities. In 1975, the legislature enacted Title 22, Art. 6 (now § 22-21-170 et seq., Ala.Code 1975), to authorize the creation of county and municipal hospital authorities.
In 1982, the legislature enacted the Health Care Authorities Act of 1982, § 22-21-310 et seq., Ala.Code 1975 (“the HCA Act”). Section 22-21-312 of the HCA Act provides for the creation of health-care authorities as public corporations in order to effectuate the intent of the HCA Act:
“The Legislature hereby finds and declares:
“(1) That publicly-owned (as distinguished from investor-owned and community-nonprofit) hospitals and other health care facilities furnish a substantial part of the indigent and reduced-rate care and other health care services furnished to residents of the state by hospitals and other health care facilities generally;
“(2) That as a result of current significant fiscal and budgetary limitations or restrictions, the state and the various counties, municipalities, and educational institutions therein are no longer able to provide, from taxes and other general fund moneys, all the revenues and funds necessary to operate such publicly-owned hospitals and other health care facilities adequately and efficiently; and
“(3) That to enable such publicly-owned hospitals and other health care facilities to continue to operate adequately and efficiently, it is necessary that the entities and agencies operating them have significantly greater powers with respect to health care facilities than now vested in various public hospital or health-care authorities and corporations and the ability to provide a corporate structure somewhat more flexible than those now provided for in existing laws relating to the public hospital and health-care authorities.
“It is therefore the intent of the Legislature by the passage of this article to promote the public health of the people of the state (1) by authorizing the several counties, municipalities, and educational institutions in the state effectively to form public corporations whose *429 corporate purpose shall be to acquire, own and operate health care facilities, and (2) by permitting, with the consent of the counties or municipalities (or both) authorizing their formation, existing public hospital corporations to rein-corpórate hereunder. To that end, this article invests each public corporation so organized or reincorporated hereunder with all powers that may be necessary to enable it to accomplish its corporate purposes and shall be liberally construed in conformity with said intent.”
A 2003 amendment to the HCA Act added the language “educational institutions” to allow a public college or university established under the Alabama Constitution that operates a school of medicine to establish a health-care authority.
It should be noted that until 1975 city and county hospitals, as well as the city or county that established them, enjoyed almost absolute governmental immunity from civil liability. See Thompson v. Druid City Hosp. Bd., 279 Ala. 314, 184 So.2d 825 (1966) (holding that a hospital board, created by local law as an agency of the county and city to construct and operate a public hospital mainly for charity, was a public agency immune from liability for the negligence of its officers and employees and that the procurement of liability-insurance coverage by the board did not affect that immunity); Clark v. Mobile Cnty. Hosp. Bd., 275 Ala. 26, 151 So.2d 750 (1963) (holding that the county hospital board was a public agency performing a governmental function and was immune from suit by paying patient for injuries allegedly suffered by him as a result of the negligence of agents, servants, or employees of the board); Laney v. Jefferson Cnty., 249 Ala. 612, 32 So.2d 542 (1947) (holding that the general provision that a county is a corporate body with power to sue and be sued does not deprive a county of the immunity from suit based on negligence so long it is engaged in governmental functions); and Moore v. Walker Cnty., 236 Ala. 688, 185 So. 175 (1938) (holding that the act authorizing and empowering a county to equip, own, and operate a hospital nowhere makes the county subject to suit for any injuries patients suffer by reason of the negligence of the officers, agents, or servants entrusted with the operation and management of the hospital).
In 1975, this Court issued two opinions that abolished the doctrine of governmental immunity for municipalities and counties, including immunity for the public hospitals they operate: Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), and Lorence v. Hospital Board of Morgan County, 294 Ala. 614, 320 So.2d 631 (1975). In Jackson, Jackson sued the City of Florence and several of its police officers seeking damages based on injuries he alleged the city’s officers had negligently inflicted on him during and after his arrest. Jackson asked this Court to review its previous interpretation of the statute now codified at § 11-47-190, Ala.Code 1975. This Court acknowledged that, based on the plain language of the statute, the legislature had abrogated tort immunity for municipalities to the extent that the alleged wrongful acts occurred “through the neglect, carelessness, or unskillfulness of ... some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty....” § 11-47-190. The Jackson Court “recognize[d] the authority of the legislature to enter the entire field, and further recognizefd] its superior position to provide with proper legislation any limitations or protections it deem[ed] necessary.” 294 Ala. at 600, 320 So.2d at 75.
In Lorence, the issue of governmental immunity in the context of a county hospital was presented. The Court discussed not only Title 22, § 204(24), Code of Ala. *430 1940 (Recomp.1958) (now § 22-21-77, Ala. Code 1975), which allowed a county hospital board “to sue and be sued and to defend suits against it,” but also Title 12, §§ 3 and 115, and Title 7, § 96, Code of Ala.1940 (Recomp.1958) (now § 11-1-2, § 11-12-5, and § 6-5-20, Ala.Code 1975, respectively), which permitted the county “to sue or be sued” and provided for a claim procedure before bringing suit. The Court stated, however, that the issue of a county’s general liability was not before the Court and that what was before it was the immunity of a county hospital board, and it held that because the statute áutho-rizing the creation of such boards expressly provided for suits against them, county hospital boards no longer had immunity from tort liability. In Cook v. County of St. Clair, 384 So.2d 1 (Ala.1980), the Court clarified the implication in its holding in Lorence, holding that counties and county commissioners are subject to suit in tort under § 11-1-2.
It is clear that health-care authorities created by a county or city no longer have State immunity and are subject to the $100,000 statutory damages cap of § 11-93-2. However, whether a health-care authority created by a State educational institution is entitled to State immunity is a question of first impression.
In the present case, the Board of Trustees of the University of Alabama (“the Board”) created a health-care authority— the Authority. In accordance with the 2003 amendment to. the HCA Act, the Board adopted a resolution creating a health-care authority. Section 22-21-312, Ala.Code 1975, setting out the legislature’s intentions in creating the HCA Act, provides that the purpose of the HCA Act is to “promote the public health of the people of the state ... by authorizing ... educational institutions in the state effectively to form public corporations whose corporate purpose shall be to acquire, own and operate health care facilities.”
The HCA Act defines an “authority” as a “public corporation organized, and any public hospital corporation reincorporated, pursuant to the provisions hereof.” § 22-21-311(a)(2), Ala.Code 1975. The Board also entered into an affiliation agreement with Baptist Health, pursuant to which Baptist Health’s assets would be transferred to the Authority. The certificate of incorporation for the Authority was filed in the Tuscaloosa County Probate Court and provided, among other things, that, subject to the affiliation agreement, the Authority shall have and may exercise all the powers and authority set out in the HCA Act.
Kay E. Davis, the plaintiff below, argues that the Authority is not a validly created health-care authority because, she argues, the HCA Act does not authorize the Authority to acquire private hospitals, and, therefore, she argues, the affiliation agreement between the Authority and Baptist Health violates the HCA Act.
Section 22-21-312, Ala.Code 1975, authorizes certain educational institutions “to form public corporations whose corporate purpose shall be to acquire, own and operate health care facilities.” Section 22-21-311(a)(14), Ala.Code 1975, defines “health care facilities” as:
“Health care facilities. Generally, any one or more buildings or facilities which serve to promote the public health, either by providing places or facilities for the diagnosis, treatment, care, cure or convalescence of sick, injured, physically disabled or handicapped, mentally ill, retarded or disturbed persons, or for the prevention of sickness and disease, or for the care, treatment and rehabilitation of alcoholics, or for the care of elderly persons, or for research with respect to any of the foregoing, includ *431 ing, without limiting the generality of the foregoing:
“a. Public hospitals of all types, public clinics, sanitoria, public health centers and related public health facilities, such as medical or dental facilities, laboratories, out-patient departments, educational facilities, nurses’ homes and nurses’ training facilities, dormitories or residences for hospital personnel or students, other employee-related facilities, and central service facilities operated in connection with public hospitals and other facilities (such as, for example, gift and flower shops, cafe and cafeteria facilities and the like) ancillary to public hospitals;
“b. Retirement homes, nursing homes, convalescent homes, apartment buildings, dormitory or domiciliary facilities, residences or special care facilities for the housing and care of elderly persons or other persons requiring special care;
“c. Appurtenant buildings and other facilities:
“1. To provide offices for persons engaged in the diagnosis, treatment, care, or cure of diseased, sick, or injured persons, or in preventive medicine, or in the practice of dentistry; or
“2. To house or service equipment used for the diagnosis, treatment, care or cure of diseased, sick, or injured persons, or in preventive medicine, or in the practice of dentistry, or the records of such diagnosis, treatment, care, cure or practice or research with respect to any of the foregoing;
“d. Parking areas, parking decks, facilities, buildings and structures appurtenant to any of the foregoing;
“e. Ambulance, helicopter, and other similar facilities and services for the transportation of sick or injured persons; and
“f. Machinery, equipment, furniture, and fixtures useful or desirable in the operation of any of the foregoing.”
The definition of health-care facilities in the HCA. Act specifically includes public hospitals and then lists several types of public hospitals “without limiting the generality” of the preceding definition of health-care facilities. The omission of “private” hospital from the definition does not mean that the legislature intended that health-care authorities could purchase only public hospitals. I agree with the reasoning of the United States Court of Appeals for the Eleventh Circuit in Askew v. DCH Regional Health Care Authority, 995 F.2d 1038 (11th Cir.1993), regarding the healthcare authority’s purchase of a private hospital. In Askew, the plaintiffs brought an antitrust action against a health-care authority to prevent the authority from completing its acquisition of a private hospital in the same region. The Eleventh Circuit held that the health-care authority qualified as a “political subdivision of the state” for the purposes of antitrust immunity. The court went on to address the plaintiffs’ argument that a health-care authority could not acquire a private hospital because, they argued, a health-care facility under the definition in § 22-21-311 of the HCA Act means a “publicly owned” hospital as opposed to a “privately owned” hospital:
“Plaintiffs’ argument is inconsistent with a common sense reading of the statute. The legislature clearly stated that, in its view, publicly-owned hospitals played a very significant role in providing health care to the poor. By establishing public, health care authorities, it sought to enhance the amount and quality of service for Alabama’s *432 poor. If DCH could only purchase other publicly-owned hospitals, the overall number of publicly-owned facilities would not increase and service to the disadvantaged would remain the same. To the contrary, by purchasing [a privately owned hospital], DCH has increased the number of publicly-owned hospitals in the Tuscaloosa area, has expanded its ability to serve indigent care needs in the region, and has enhanced its ability to provide indigent and reduced-rate care at its existing facilities. This is entirely consistent with what the Alabama legislature authorized DCH to do.”
995 F.2d at 1040.
Davis asserts that the affiliation agreement between the Board and Baptist Health provides that upon termination of the agreement the assets of the Authority will be transferred to Baptist Health or its designee. Davis argues that this provision of the affiliation agreement conflicts with § 22-21-389, Ala.Code 1975, which provides that upon dissolution of a health-care authority formed pursuant to the HCA Act the assets revert to the local governmental entity or the educational institution that created the authority. Davis also contends that the specific provision in the Authority’s articles of incorporation that provides that the Authority is obligated under the affiliation agreement to reconvey assets to Baptist Health likewise violates § 22-21-339.
Section 22-21-339 prescribes the manner in which a health-care authority formed under the HCA Act is dissolved. Section 22-21-339 provides:
“At any time when the authority does not have any securities outstanding and when there shall be no other obligations assumed by the authority that are then outstanding, the board may adopt a resolution ... declaring that the authority shall be dissolved.... [I]n the event that it owns any assets or property at the time of the dissolution, the title to its assets and property ... shall ... vest in one or more counties, municipalities, or educational institutions in such manner and interests as may be provided in the ... certificate of incorporation.”
The affiliation agreement between the Board and Baptist Health accomplishes the purpose of the management agreement between Baptist Health and University of Alabama at Birmingham Health System (“UABHS”), with the stated goal of “(i) providing community-based health care in the Montgomery area; (ii) promoting efficiency and quality in the delivery of health care services to the people of the state of Alabama; and (iii) supporting the academic and research mission of the [Board and UABHS] with respect to health care services and science of medicine.” In the affiliation agreement, the parties expressly recognize that the Board has the power under the HCA Act to organize a healthcare authority and that the authority so created would take possession of and operate Baptist Health’s assets during the term of the affiliation agreement.
By the separate act of creating a healthcare authority, the Board formed a public corporation under the HCA Act, providing financial benefits and other powers, such as eminent domain and an exemption from certain taxation. Section 22-21-318, Ala. Code 1975, provides, in pertinent part:
“(a) In addition to all other powers granted elsewhere in this article, and subject to the express provisions of its certificate of incorporation, an authority shall have the following powers, together with all powers incidental thereto or necessary to the discharge thereof in corporate form:
[[Image here]]
“(5) To acquire, construct, reconstruct, equip, enlarge, expand, alter, *433 repair, improve, maintain, equip, furnish and operate health care facilities at such place or places, within and without the boundaries of its authorizing subdivisions and within and without the state, as it considers necessary or advisable;
[[Image here]]
“(7) To receive, acquire, take and hold (whether by purchase, gift, transfer, foreclosure, lease, devise, option or otherwise) real and personal property of every description, or any interest therein, and to manage, improve and dispose of the same by any form of legal conveyance or transfer; provided however, that the authority shall not, without the prior approval of the governing body of each authorizing subdivision, have the power to dispose of (i) substantially all its assets, or (ii) any health care facilities the disposition of which would materially and significantly reduce or impair the level of hospital or health care services rendered by the authority; and provided further, that the foregoing proviso shall not be construed to require the prior approval of any such governing body for the mortgage or pledge of all or substantially all its assets or of any of its health -care facilities, for the foreclosure of any such mortgage or pledge or for any sale or other disposition thereunder;
[[Image here]]
“(18) To receive and accept from any source aid or contributions in the form of money, property, labor or other things of value, to be held, used and applied to carry out the purposes of this article, subject to any lawful condition upon which any such aid or contributions may be given or made;
[[Image here]]
“(23) To assume any obligations of any entity that conveys and transfers to the authority any health care facilities or other property, or interest therein, provided that such obligations appertain to the health care facilities, property or interest so conveyed and transferred to the authority.”
The terms of the affiliation agreement between Baptist Health and the Board comply with the powers granted a healthcare authority to transfer property as contemplated by § 22-21-318. If the Authority has no outstanding securities or obligations and the Authority’s board elects to dissolve the Authority, under § 22-21-339 the Authority’s assets, if any, will be transferred to the Board. In contrast to a dissolution, the affiliation agreement between Baptist Health and the Board addresses the transfer of property in the event of the termination of the affiliation agreement. It does not address the dissolution of the Authority; thus, nothing in the affiliation agreement contradicts the provisions of § 22-21-339. Section 22-21-339 contemplates that the Authority might not own assets at the time of dissolution, and nothing in the HCA Act requires that the Authority own assets before it can be dissolved. There is a distinction between the disposition of assets upon a dissolution of the Authority under § 22-21-339 and a termination of the affiliation agreement between Baptist Health and the Board, where the affiliation agreement states that the Board must return assets to Baptist Health upon the termination of the agreement.
Davis also argues that the Authority does not meet this Court’s test for determining whether an entity is entitled to sovereign immunity. In Ex parte Greater Mobile-Washington County Mental Health-Mental Retardation Board, 940 So.2d 990 (Ala.2006), a resident at a group home was killed in an accident involving a van operated by the county mental-health *434 board. The parents of the resident sued the board and the manager of the group home. The defendants moved for a summary judgment on the basis of various types of immunity, the board principally relying on its claim that it was entitled to sovereign immunity as an agency of the State. This Court reviewed caselaw relating to the criteria for determining whether a particular entity qualifies as a State agency for purposes of § 14, Ala. Const. 1901, and concluded that the board had not shown that it was qualified as a State agency. Specifically, this Court analyzed the three-factor test set out in Staudt, supra: (1) the character of the power delegated to the body; (2) the relation of the body to the State; and (3) the nature of the body’s function. Some attributes of the board and some aspects of its relation with the State suggested that the board was a State agency, For example, caring for citizens suffering from mental illness is a governmental function, citing White v. Alabama Insane Hosp., 138 Ala. 479, 35 So. 454 (1903). Further, this Court recognized that the board had the power of eminent domain and that its property, income, and activities were exempt from taxation. However,'certain elements favored characterizing the board as an entity separate from the State. Although the State exercised a certain amount of oversight over the board, the oversight was minimal. The board’s regulations provided that the “facilities and programs” of the board were not under the direction or control of any person other than its directors so long as those facilities and programs complied with the minimum standards adopted by the Board of Health and the Department of Mental Health as set out in § 22-51-12, Ala.Code 1975. Also, the board was authorized to own all its property in its own name and to sell or to otherwise dispose of it. Ownership of the property in the name of the entity has- been considered indicative of its independent status, particularly when the entity was authorized to sell or dispose of the property independent of the State. Also, the board was authorized to borrow money by issuing bonds and notes and to secure that indebtedness by a pledge of its revenues, so that its indebtedness was not an obligation of the State. Ultimately, this Court concluded that the board was not entitled to sovereign immunity.
The present case is distinguishable from Greater Mobile-Washington County Mental Health Board because the HCA Act specifically states that a health-care authority established thereunder “acts as an agency or instrumentality of its authorizing subdivisions and as a political subdivision of the state.” § 22-21-318(c)(2), Ala. Code 1975. In Greater Mobile-Washington County Mental Health Board, the enabling legislation allowed for three or more persons to form a public corporation to contract with the State Board of Mental Health and Mental Retardation in constructing and operating facilities and in carrying out programs in particular areas of the state. Nothing in that enabling legislation provided that the public corporation would be an arm or instrumentality of the Department of Mental Health. It is the clear language of the enabling provisions of the HCA Act that a health-care authority created under the HCA Act acts as an agency or instrumentality of its authorizing subdivision and as a political subdivision of the State.
Pursuant to § 22-21-318(c)(2), the Authority “acts as an agency or instrumentality of its authorizing subdivisions and as a political subdivision of the state.” See Staudt, 388 So.2d at 993 (addressing the factor “the relation of the body to the state”); see also Tennessee Valley Printing Co. v. Health Care Auth. of Lauderdale Cnty., 61 So.3d 1027 (Ala.2010) (holding that a health-care authority is a local *435 governmental entity for the purposes of the Open Records Act). The incorporating entity for the Authority is the Board, which has State immunity. See Cox v. Board of Trs. of the Univ. of Alabama, 161 Ala. 639, 49 So. 814 (1909) (holding that public institutions created by the State purely for charitable or educational purposes are a part of the State and are not subject to be sued, because § 14 prohibits the State from being a defendant in any court of law or equity).
The HCA Act “shall not be construed as a restriction or limitation upon any power, right or remedy which any county, municipality, educational institution, or public hospital corporation now in existence or hereafter formed may have in the absence of this article.” § 22-21-343, Ala.Code 1975. Article I, § 14, Ala. Const.1901, provides “[t]hat the State of Alabama shall never be made a defendant in any court of law or equity.” “The manifest purpose of section 14 ... was to prohibit the Legislature from passing' any act authorizing the State to be sued in any court, and clearly any authorization to that end would be void because in violation of the constitutional provision.” Alabama Girls’ Indus. Sch. v. Reynolds, 143 Ala. at 585, 42 So. at 116. I recognize that § 22-21-318(a)(2), Ala.Code 1975, provides that an authority may sue' or be sued in its own name. It does not matter that § 22-21-318 allows an authority created by an educational institution to incorporate and to sue in its corporate name, because the plenary authority of the legislature to enact laws is limited by our Constitution. “The legislature may not deny immunity from suit when that immunity is constitutionally granted.” Staudt, 388 So.2d at 992. This Court has held that the “constitutionally guaranteed principle of sovereign immunity, acting as a jurisdictional bar, precludes a court from exercising subject-matter jurisdiction. Without jurisdiction, a court has no power to act and must dismiss the action.” Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432, 435 (Ala.2001).
I disagree with the majority’s position that a health-care authority is “an agency or instrumentality of its authorizing subdivision!] and ... a political subdivision of the State” only in the context of anticom-petitive activity. 158 So.3d at 408. Section 22-21-318 sets out the powers of a health-care authority. The legislature clearly recognizes that a health-care authority, in exercising the broad powers granted it, may engage in anticompetitive activity. However, the legislature chose to allow State universities operating medical schools to create health-care authorities. The Board is the authorizing subdivision of the Authority and, as such, is an agent of the State. The legislature, in allowing a State agency to create a health-care authority cannot then limit the State agency’s immunity to anticompetitive activity.
Accordingly, I believe the circuit court did not have subject-matter jurisdiction over this action; thus, the judgment is void, and the appeal should be dismissed. See Alabama Dep’t of Corr. v. Montgomery County Comm’n, 11 So.3d 189 (Ala.2008) (holding that because of the State’s immunity from suit, a complaint filed solely against the State or one of its agencies is a nullity and void ab initio, and any action taken by a court without subject-matter jurisdiction — other than dismissing the action — is void). Therefore, I must dissent.
I also write to address Davis’s assertion on rehearing that allowing the Authority immunity will automatically lead to immunity for physicians and employees. I disagree. For example, I. note that UAB Hospital and the Board, as extensions of the State, are immune. See Liberty National, supra (noting the correct designation for the hospital and the Board and recognizing their immunity). However, *436 the University of Alabama at Birmingham Health Services Foundation, P.C., is not immune. See Liberty National, supra (describing the Foundation as a nonprofit, independent professional corporation established by the faculty of the medical school that in part attends to billing services for those physicians and, as such, is not protected by immunity). Physicians working for the Foundation are not immune from suit. Rivard v. University of Alabama Health Servs. Found., P.C., 835 So.2d 987 (Ala.2002) (reversing a summary judgment for UAHSF and one of its physicians in a medical-malpractice case in which the plaintiff was treated at UAH Hospital); Waites v. University of Alabama Health Servs. Found., P.C., 638 So.2d 838 (Ala.1994) (noting the dismissal of UAJB Hospital as a defendant on the basis of immunity but affirming a summary judgment in favor of the UAHSF, physicians, and residents because the plaintiff failed to rebut expert testimony of malpractice). I recognize that a State official or agent may be entitled to State-agent immunity as to actions asserted against him or her in his or her individual capacity. In Ex parte Cranman, 792 So.2d 392 (Ala.2000), a medical-malpractice case against a resident physician employed by the University of Alabama’s health center, this Court traced the evolution of State-agent immunity, restated the law of State-agent immunity, and suggested the formulation of a new test for determining when State employees sued in their individual capacities would be entitled to the benefits of State-agent immunity. In Cranman, the resident physicians were not entitled to State-agent immunity. See also Hauseman v. University of Alabama Health Servs. Found., P.C., 793 So.2d 730 (Ala.2000)(addressing State-agent immunity under Cranman and holding that physician and resident physicians were not entitled to State-agent immunity); Wimpee v. Stella, 791 So.2d 915 (Ala.2000) (holding that resident physicians employed by the University of South Alabama Hospital were not entitled to State-agent immunity). In the present case, Davis also sued two physicians and several fictitiously named parties. Davis did not oppose the properly supported summary-judgment motions filed by the physicians, and it does not appear that any parties were substituted for the fictitiously named parties.
Last, I note that there is an obvious legislative remedy to Davis’s assertion that the Authority’s immunity will lead to private hospitals’ placing their assets in a health-care authority established by a State university operating a medical school to secure State immunity, which is to repeal the 2003 amendment to the HCA Act. I also note that this Court in Hutchinson v. Board of Trustees of University of Alabama, 288 Ala. 20, 256 So.2d 281 (1971), addressed criticisms of sovereign immunity and the options advanced in those criticisms. The Court acknowledged that some jurisdictions have judicially abandoned sovereign immunity in cases involving hospitals connected to a State university, but recognized that in Alabama a constitutional amendment would be required to permit legislative implementation of a tort-claims system of compensation at the State level. The Court also recognized that, in the early years of our State,
“our rule of state governmental responsibility was directly opposite from what it is today. Our first Constitution provided:
“ ‘The general assembly shall direct, by law, in what manner, and in what courts, suits may be brought against the State.’ Ala. Const. Art. 6 § 9 (1819).”
288 Ala. at 23, 256 So.2d at 282-83.
Accordingly, I respectfully dissent.
STUART, J., concurs.

. The Authority raises this argument for the first time on appeal. Generally, an appellate court cannot consider arguments raised for the first time on appeal. CSX Transp., Inc. v. Day, 613 So.2d 883, 884 (Ala.1993). However, "[t]he assertion of State immunity challenges the subject-matter jurisdiction of the court; therefore, it may be raised at any time by the parties or by a court ex mero motu.” Atkinson v. State, 986 So.2d 408, 411 (Ala.2007). " ‘[A]n action contrary to the State’s immunity is an action over which the courts of this State lack subject-matter jurisdiction.’ ” Ex parte Alabama Dep’t of Transp., 978 So.2d 17, 21 (Ala.2007) (quoting Larkins v. Department of Mental Health & Mental Retardation, 806 So.2d 358, 363 (Ala.2001)).